# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | | |
|---|---|---|
| TIMOTHY NOLL, et al., | ) | |
| | ) | |
| PLAINTIFFS | ) | |
| | ) | |
| v. | ) | 1:15-CV-00493-LEW |
| | ) | |
| FLOWERS FOODS, INC., et al., | ) | |
| | ) | |
| DEFENDANTS | ) | |

## DECISION AND ORDER

In this action, Plaintiff Timothy Noll alleges that Defendants Flowers Foods, LePage Bakeries, and CK Sales Company misclassify Maine-based product distributors as independent contractors, and that Maine and federal law require that he and other distributors be compensated as employees. Now pending are Plaintiff's Motion for Class Certification (ECF No. 191) and Defendants' Motion for Decertification of the Conditionally Certified Collective Action (ECF No. 190).

The parties' briefs set forth the salient factual background and I discern no material factual dispute that requires resolution in order to rule on the pending motions. For reasons outlined below, Plaintiff's motion is granted and Defendants' motion is denied.

### I. CLASS CERTIFICATION

Plaintiff requests certification of a class of plaintiffs to pursue claims for employee misclassification (Count II – declaratory judgment of misclassification); violation of Maine's independent contractor law, 26 M.R.S. §§ 1043(11)(E) and 591-A (Count III);

1

violation of Maine's employment practices laws, 26 M.R.S. §§ 621 and 661 (Count IV); and contract recission and quantum meruit (Count V). Through these claims Plaintiffs seek injunctive relief as well as damages for unpaid overtime and unlawful paycheck deductions. Plaintiff proposes the following class:

> All persons who, at any time from December 2, 2012 continuing through entry of judgment in this case, worked as distributors for Flowers Foods, Inc., Lepage Bakeries, Inc., and/or CK Sales Co., LLC, in the State of Maine and were classified as independent contractors under their distribution agreements.

(Plaintiff's Motion for Class Certification at 8, ECF No. 192-1.)

Plaintiff must demonstrate that the class and claims satisfy the four prerequisites of Fed. R. Civ. P. 23(a), and that the proposed class action would be a type of class action condoned under Fed. R. Civ. P. 23(b). For reasons set forth below, I find that Plaintiff has satisfied the requirements and, therefore, I will certify the class.

**A. Rule 23(a) Prerequisites**

Pursuant to Rule 23(a):

One or more members of a class may sue ... as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

*1. Numerosity.*

The proposed class consists of approximately 102 individuals. Although Defendant

argues that Plaintiff has not demonstrated that joinder would be impracticable, I conclude that the size of the class meets the numerosity requirement. *Scovil v. FedEx Package Sys., Inc.*, 886 F. Supp. 2d 45, 48 (D. Me. 2012).

    2. *Commonality*

There are questions of law and fact common to the class. These include whether Defendants' Maine distributors are common law employees or independent contractors. However, "[w]hat matters to class certification … is not the raising of common 'questions'—even in droves—but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Determination of the core common law misclassification issue in this case requires the Court to assess, among other things, the nature of the work, including whether it is integral to Defendants' business model; the method of payment; and what tools, supplies, and materials the worker must supply. *Murray's Case*, 154 A. 352, 354 (Me. 1931). A classwide proceeding can generate common answers on each of these factors, which factors have weight in the multi-factorial common law assessment of employee status. While there are some differences among the class members with respect to certain factors – for example, the employment of assistants – there nevertheless is commonality among them with respect to most factors.

    3. *Typicality*

Plaintiff's claims must be typical of the claims held by the putative class members. The typicality prerequisite "ensure[s] that class representatives, in pursuing their own interests, concurrently will advance those of the class." *In re Hannaford Bros. Co.*

*Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 27 (D. Me. 2013). "Class representatives' claims are 'typical' when their claims 'arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and ... are based on the same legal theory.'" *Id.* (quoting *García–Rubiera v. Calderón*, 570 F.3d 443, 460 (1st Cir. 2009)). "[T]ypicality 'should be determined with reference to the [defendant's] actions, not with respect to particularized defenses it might have against certain class members." *In re Neurontin Mktg. & Sale Practices Litig.*, 244 F.R.D. 89, 106 (D. Mass. 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)). Plaintiff's claims are typical of the class and will tend to advance the interest of the putative class members. Plaintiff commits himself, personally, to the day-to-day delivery and related demands of his distributorship, as is typical of the class.

### 4. Adequacy of Representation

To be an adequate representative of the class, Plaintiff must be in a position to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "There are two elements to the adequacy inquiry. First, there must be an absence of potential conflict between the named plaintiff[] and the potential class members, and, second, the lawyers chosen by the class representative must be 'qualified, experienced, and able to vigorously conduct the proposed litigation.'" *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 29 (D. Me. 2013) (quoting *Andrews v. Bechtel Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)). It is not apparent to me that the various differences among the class members and Plaintiff Noll, in terms of their day-to-day interactions with Defendants and customers, give rise to a conflict that makes Noll an inadequate representative. Moreover,

class counsel are qualified, experienced, and able to pursue the interest of the class in this litigation.

### B. Rule 23(b) Types of Class Actions

In addition to satisfying the four prerequisites of Rule 23(a), Plaintiff must demonstrate that the proposed class action would fit within one of the "types" of class actions described in Rule 23(b). Plaintiff asserts that the applicable type is the type described in Rule 23(b)(3). Under that provision, a class action may be maintained, provided that:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Whether common questions predominate is the most closely contested issue. In opposition to Plaintiff's motion, Defendants have identified several ways in which the members of the putative class are different, including, in particular, the fact that some maintain more than one territory and/or employ assistants to help them in their work and, in a few instances, to perform the work. In addition, various members of the class describe their day-to-day subjective experience differently, and in potentially significant ways. For

5

example, some members describe a greater degree of leeway in relation to which products they order from Defendants and how they go about the tasks of filling customers' shelves, and a greater degree of perceived opportunity to expand sales within their districts, than do other distributors. For these differences to predominate over the common questions, I would have to conclude that they are the real drivers of the employee-status analysis that must be applied under Maine common law.

In *Scovil*, Judge Hornby addressed a somewhat similar request by Fed Ex delivery drivers for certification of a class comprised of full-time delivery drivers classified by Fed Ex as independent contractors under uniform operating agreements. 886 F.Supp.2d 45 (2012). For the reasons stated in his decision and order, which I find persuasive, the analysis that will govern in this case is the eight-factor common law right-to-control test. *See id.* at 50-52 & n.8 (citing *Taylor v. Kennedy*, 719 A.2d 525, 527-28 (Me. 1998), *Marston v. Newavom*, 629 A.2d 587, 590-91 (Me. 1993), and *Murray's Case*, 130 Me. 181, 154 A. 352 (1931)). The eight factors are as follows:

> (1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price;
>
> (2) independent or distinct nature of the business or calling;
>
> (3) the need or freedom to employ assistants with the right to supervise their activities;
>
> (4) the obligation to furnish the tools, supplies, and materials needed to perform the work;
>
> (5) the right to control the progress of the work except as to final results:
>
> (6) the time for which the worker is employed;
>
> (7) the method of payment, whether by time or by job; and

(8) whether the work is part of the regular business of the employer.

*Murray's Case*, 154 A. at 354. These factors must be applied with a particular emphasis on their tendency to reflect whether or not the employer has the "right to control" or the "right to interfere" in the performance of the work, not whether the employer has elected to exercise the right in particular instances. *Scovil*, 886 F.Supp.2d at 52 (quoting *Murray's Case*, 154 A. at 354, and collecting cases). Ultimately, it is the right to control that is demonstrative of an employer-employee relationship, and none of the eight separate factors controls the analysis. *Id.* However, deserving of somewhat greater weight in the context of this litigation, i.e., in the context of a claim asserting that worker-protective statutes have been violated, are the two factors that involve the nature of the work and its importance to the employer's business operations. *Id.* at 53 (citing *Legassie v. Bangor Pub. Co.*, 741 A.2d 442, 445 & n.4 (Me. 1999)).[1]

When I consider the overarching concern for the right to control the progress of the work, as distinct from particular instances of actual control exerted by Defendants over individual distributors, it is my assessment that proof of the right to control rests upon predominantly common evidence. Additionally, to the extent that various factors may allow for some debate over the significance of individualized proof, the two factors deserving of somewhat greater weight similarly turn on predominantly common evidence. That is, evidence regarding the nature of the work and its importance to Defendants'

---

[1] Since Judge Hornby's decision and order in *Scovil*, the Maine Supreme Judicial Court has similarly turned to *Murray's Case* and *Legassie* to resolve a dispute over employee status. *Day's Auto Body*, *Inc. v. Town of Medway*, 2016 ME 121, ¶ 17, 145 A.3d 1030, 1038.

business is common to the group and is as much a part of Plaintiff's Noll's experience as it would be part of the experience of the putative class members. Moreover, as Judge Hornby observed in *Scovil*, the individualized evidence that Defendants point to in support of a finding of independent contractor status would be material, and therefore admissible, even if I denied the motion to certify the class and this case proceeded exclusively on the basis of Plaintiff's Noll's claims. *See id.* at 54. It is therefore not persuasive to argue that this evidence militates in favor of the maintenance of multiple individual actions.[2] That consideration takes me to the matter of whether class proceedings would be superior to other methods of adjudication.

I conclude that a class action is superior to other methods, because class members would have little incentive to maintain separate actions, there is no indication of any competing cases pending in another Maine forum, this particular Maine forum is a good forum in which to concentrate the claims in issue, and management of the class action does not at this juncture appear to present difficulties that would not exist in a class action generally. However, I am concerned that difficulties may arise when it comes to determining whether a small subset of members of the class presently defined in Plaintiff's motion may require closer scrutiny on the merits for being passive territory owners. Plaintiff have defined the class to encompass those who "worked as distributors … under

---

[2] Judge Hornby also noted, again persuasively, that evidence related to distributors' varying individual experience of entrepreneurship and greater or lesser supervision by Defendants' managers could, in the specific context of distribution services, exist equally among employees as among independent contractors. *Scovil*, 886 F.Supp.2d at 54 n.12. Similarly, Defendants' concern over defenses they may be able to raise against individual class members does not persuade me that the questions pertaining to those defenses would predominate or make a class action proceedings inferior to alternative methods of litigating the claims presented.

their distribution agreements." Plaintiff will refine the class definition to exclude distributors who have not personally serviced a territory within the limitation period. With that revision, I conclude that common questions will predominate, that class action proceedings are superior to other methods, and that Plaintiff has met the requirements of Rule 23(b)(3).[3]

## II. FLSA COLLECTIVE ACTION

Defendants request that I decertify the Fair Labor Standards Act ("FLSA") collective action Judge Woodcock conditionally certified in his Order of January 20, 2017. Doc. No. 81. The FLSA permits labor litigation in the form of a collective action, effectively providing its own mechanism for classwide resolution of labor disputes

---

[3] The parties have presented four other cases in which courts have considered class certification for claims brought by Flowers Foods distributors in other states. In two cases, the courts concluded it was appropriate to certify a class. *See Rehberg v. Flowers Baking Co. of Jamestown*, No. 3:12-cv-596, 2015 WL 1346125 (W.D.N.C. Mar. 24, 2015); *Richard v. Flowers Foods, Inc.*, No. 6:15-cv-2557 (W.D. La. Aug. 13, 2018). In two others, the courts concluded class proceedings were not appropriate. In *Martinez v. Flower Foods, Inc.*, No. 2:15-cv-5112, 2016 WL 10746664 (C.D. Cal. Feb. 1, 2016), the court found the proposed class was not ascertainable because there was no "administratively feasible method to determine when a driver 'personally serviced' his territory and when he employed helpers." *Id.* at *5-8. I am not persuaded that instances involving the use of "helpers" renders the class non-ascertainable. A distributor could hire "helpers" and still be an employee. The *Martinez* Court also concluded that individual issues predominate when it comes to the defendant's right to control based on evidence of the different extent to which individual distributors experience supervision by the defendant's agents, *id.* at *10-11, a position that I think is incorrect. Similarly, in *Soares v. Flowers Foods, Inc.*, 320 F.R.D. 464 (N.D. Cal. 2017), the court concluded that individual issues predominated. While the *Soares* Court did not agree that the workers' varying experiences of control would undermine class proceedings, *id.* at 481-82, the court denied the motion to certify because the class included distributors who were "absentee territory owners," distributors who occasionally hired substitute drivers, and distributors who also distributed goods for other manufacturers. *Id.* at 483. My impression is that the territories in California may well provide a different economic return that is more likely to result in passive investment in territories or greater reliance on others to perform distribution services. If I am wrong, it may be appropriate to reevaluate certification or modify the class, but at present I am satisfied that certification is appropriate. *General Tel. Co. of SW v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a [class] certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation.").

9

governed by the FLSA.⁴ In this case, following conditional certification and the issuance of notice to potential class members, the number of participants in the collective action has grown to 54.

To overcome Defendants' motion to decertify, Plaintiff must establish, with the benefit of discovery, that he and the opt-in plaintiffs are in fact similarly situated with respect to the FLSA claim. *Prescott v. Prudential Ins. Co.*, 729 F.Supp.2d 357, 364 (D. Me. 2010). Whether the individuals who intend to participate in the collective action are similarly situated calls for consideration of, inter alia, whether they have similar job duties with similar provisions for compensation, and whether they are or were similarly subjected to the policy or plan that is challenged in the action. *Id.* at 364. In addition, a court should consider whether the defendant may have defenses against individual plaintiffs that would make it unfair to consider the claim(s) collectively. *Scovil*, 886 F.Supp.2d at 57. The standard is sometimes described as less demanding than Rule 23. *Id.* (citing *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 580 (6th Cir. 2009)).

For the reasons set out in my discussion of Plaintiff's motion to certify a class under Rule 23, I find that the plaintiffs are similarly situated, that it is possible to preserve and address individual defenses, and that maintenance of a collective action is preferable to potentially conducting many separate trials, even if those trials are joined for purposes of

---

⁴ "Like a class action under Federal Rule of Civil Procedure 23, a collective action under 29 U.S.C. § 216(b) gives 'plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources' and allows for 'efficient resolution in one proceeding of common issues of law and fact arising from the same alleged ... activity.'" *Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 359 (D. Me. 2010) (quoting *Hoffmann–La Roche v. Sperling*, 493 U.S. 165, 170 (1989)). "Unlike a class action, potential plaintiffs must 'opt in' to be included in the action and certification of a collective action proceeds in two-stages." *Saunders v. Getchell Agency Inc.*, No. 1:13-CV-00244-JDL, 2014 WL 12539643, at *2 (Dec. 12, 2014), *report and recommendation adopted*, 2015 WL 1292594 (D. Me. Mar. 23, 2015).

pretrial proceedings. Moreover, given my certification of a class action on the state law claims, it would be a waste of the party's resources and judicial resources not to consider the FLSA claims in the same proceeding. I will, therefore, deny the motion to decertify.

### III. CONCLUSION

Plaintiff's Motion for Class Certification, Doc. No. 191, is **GRANTED** and Defendants' Motion for Decertification of the Conditionally Certified Collection Action, Doc. No. 190, is **DENIED**. In addition, and again borrowing from the work of Judge Hornby, I **ORDER** as follows:

1. Without prejudice to their objections to this decision, the parties shall meet and confer on the form and content of an order certifying and defining the class to satisfy Rule 23(c)(1)(B)'s requirement that the order "must define the class and the class claims, issues, or defenses."

If the parties cannot agree on the order, they shall present jointly the portions on which they do agree and separately—with support for their competing positions—the portions on which they cannot agree. They shall do so by February 8, 2019.

2. The parties shall meet and confer on the form and content of a class notice that satisfies Rule 23(c)(2)(B). The same procedures and deadlines shall be followed as in the preceding paragraph.

3. The order certifying the class must also appoint class counsel. In that connection, I exercise my authority to order that class counsel propose terms for attorney fees and nontaxable costs, as well as record-keeping and documentation requirements, and provide me with any fee agreement(s) that they have entered. *See* Rule 23(g)(1)(C). They shall do

so by the same deadline.

**SO ORDERED.**

Dated this 15th day of January, 2019

/S/ LANCE E. WALKER
**LANCE E. WALKER**
**UNITED STATES DISTRICT JUDGE**