UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| TIMOTHY NOLL, individually and, on behalf of similarly situated individuals, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:15-cv-00493-LEW |
| FLOWERS FOODS INC, LEPAGE BAKERIES PARK STREET, LLC., and CK SALES CO., LLC, | ) ) ) | |
| Defendants. | ) ) ) | |

## ORDER ON DEFENDANTS'
## MOTION FOR DECERTIFICATION OF FLSA COLLECTIVE ACTION

The matter is before the Court on Defendants' Motion for Decertification of the FLSA Collective Action (ECF No. 268). For reasons set out in this Order, Defendants' Motion is granted.

### BACKGROUND

This civil action presents "collective" claims for recovery of unpaid overtime wages pursuant to the federal Fair Labor Standards Act (FLSA). Plaintiff Timothy Noll contends Defendants Flowers Foods, Lepage Bakeries, and CK Sales misclassified the members of the collective as independent contractors and thereby deprived those individuals of overtime wages throughout the claim period.

On March 20, 2019, I certified the following FLSA collective:

All persons who, at any time from December 2, 2012, continuing through entry of judgment in this case, worked as distributors for Flowers Foods, Inc., Lepage Bakeries, Inc., and/or CK Sales Co., LLC, and personally serviced one or more territories in the state of Maine and were classified as independent contractors under their distribution agreements.

Class Certification Order (ECF No. 219).

On May 31, 2019, the parties filed motions for summary judgment.  On January 29, 2020, based on the summary judgment record, I found that the distribution activity at issue in this case is subject to the Motor Carrier Act (MCA) exemption to the FLSA, unless a given distributor can establish that his or her use of a personal vehicle is within the Technical Corrections Act's exception to the MCA exemption.  Although Plaintiff Noll's summary judgment presentation was not calibrated to make the TCA showing, I denied Defendant's request for collective-wide summary judgment on the FLSA claim and a related claim for declaratory judgment because I concluded, based on some of the evidence contained in the record, that there are some members of the FLSA class who likely could demonstrate that they conducted some product distribution services in personal vehicles and, consequently, could be entitled to overtime wages for certain weeks of the claim period.[1]  Specifically, I worded my conclusion as follows:

The record supports the finding that at least some of the members of the FLSA class have on occasion driven personal vehicles to deliver interstate products to their customers.  In particular, it appears that pull up or recall duties can involve the delivery of products to restock customers' shelves. Based on this evidence, the finder of fact could conclude, through an exercise

---

[1] I granted summary judgment in favor of Defendants on the state law claims.

of inferential reasoning, that there are some individuals who will, in some work weeks, use personal vehicles to deliver in-bound products ….

Summary Judgment Order at 22.

Nevertheless, because Defendants carried their burden of demonstrating that the distribution activity was subject to the Secretary of Transportation's jurisdiction under the MCA, such that each and every class member would only be entitled to relief if he or she delivered product in a personal vehicle during any weeks in the class period in which his or her hours exceeded 40, and because the summary judgment record failed to demonstrate that lead Plaintiff Timothy Noll would be able to make such a showing, I granted Defendants leave to file a motion to decertify the FLSA class.

## DISCUSSION

Defendants' Motion for Decertification of the FLSA Collective Action (ECF No. 268) is founded on the following factors and contentions:

1. Plaintiff Timothy Noll has provided deposition testimony that indicates he never used a personal vehicle to deliver product to his customers;

2. For the opt-in Plaintiffs, a recovery is only possible if they transported product in their personal vehicles to satisfy existing orders;

3. The burden to make this showing is Plaintiffs' burden, because the showing is necessary to overcome the MCA exemption for which Defendants have already carried their burden at the summary judgment stage; and

4. Plaintiffs cannot make this showing with representative evidence because each plaintiff's conduct in any given week is an individualized inquiry and Plaintiffs failed to

develop a record that would permit the finder of fact to determine that plaintiffs' activities in this regard were in any way uniform or typical across the collective.

In opposition to the motion, Plaintiff Noll argues the TCA exception to the MCA overtime exemption "can largely be determined with representative evidence, and this Court can efficiently handle individualize factfinding, should it be required."  Opposition at 1 (ECF No. 274-1 (unredacted version)).  Noll observes, correctly, that Courts regularly engage in individualized fact finding in FLSA matters.  *Id.*  He asserts, too, that "Plaintiffs' work pulling and transporting stale product, which they uniformly do, constitutes the continuation of interstate transportation under the TCA," and that "[a]ll Plaintiffs are similarly situated with regard to *this* legal issue," and also with regard to issues related to the nature of their work and their common law employee status.  *Id.*  Should I disagree that the TCA exception can be demonstrated through representative evidence involving pulling stale product, Noll argues I should certify a small collective comprised of only those opt in plaintiffs who delivered product in personal vehicles.  *Id.* at 2, 17-19.

## A.    The TCA's Interstate Requirement

In the Summary Judgment Order, I reached a conclusion of law that the distributors' intrastate transportation activity is subject to regulation by the Secretary of the Department of Transportation, and therefore within the scope of the MCA exemption from the FLSA's overtime provision, 29 U.S.C. § 213(b), because it involves the carriage of property, in commercial vehicles, in interstate commerce.  *See* 49 U.S.C. §§ 13102(15)(A), 13501.  As to the interstate commerce component, based on Department of Labor regulations, I

concluded that the distributors' use of commercial vehicles is part of Defendants' interstate transportation program because the distributors' deliveries are part of "a practical continuity of movement of the out-of-state goods through [Defendants'] distribution point to [their] customers," U.S. Dep't of Labor, Field Operations Handbook § 24d02(b) (Rev. 690, May 23, 2016), available at https://www.dol.gov/whd/FOH/FOH_Ch24.pdf, "*in fulfillment of existing orders*." Summary Judgment Order at 21-22, 24 (emphasis added). That conclusion, I am confident, was sound.

I then considered whether the so-called Technical Corrections Act exception (what I will here call the "small vehicle exception") would permit the distributors, as a collective, to escape the MCA exemption. I concluded that a given distributor might demonstrate entitlement to FLSA overtime wages, if the distributor delivered fresh bakery products to the customers who ordered them, using a "personal vehicle" rather than a commercial box truck, and the record suggested to me that there are some distributors who might be able to do so for some weeks in the claim period. However, nothing in the record suggested to me that personal vehicle deliveries are typical for the collective, calling into question whether it would be fair to determine collective-wide liability based on representative evidence that, frankly, Plaintiff Noll never put forward in his summary judgment statements.

In the course of my analysis, albeit in a footnote, I rejected the idea that distributors who pull stale product from the store shelves and carry it away in their personal vehicles would come within the small vehicle exception, reasoning that this was not the kind of transportation activity that would warrant an exercise of jurisdiction by the Secretary, and

therefore did not affect transportation in interstate commerce.  Summary Judgment Order at 29 n.14.  But in doing so, I conflated the MCA jurisdictional standard with the TCA interstate commerce standard.  On further reflection, I do not see why a standard devised to determine whether the Secretary of Transportation has jurisdiction over internodal intrastate shipments should be applied when one is attempting to determine whether Congress intended to afford FLSA relief to workers pursuant to the small vehicle exception to the MCA exemption.

As explained in the Summary Judgment Order, the TCA's small vehicle exception extends the protection of Section 7 of the FLSA to "covered employee[s]" whose transportation work comes within the jurisdiction of the Secretary of Transportation, but whose work also, "in whole or in part," affects "the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate … commerce."  29 U.S.C. § 207 Statutory Note (quoting Pub. L. 110-244, Title III, § 306(c) (2008).  This is the so-called "small vehicle" or "non-commercial vehicle" exception (which I have also referred to as a "personal vehicle," following the lead of the parties).

Here, the question is whether "pulling stales" from the shelves and transporting them to another location in a small vehicle is activity that affects "the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways *in interstate … commerce*."  29 U.S.C. § 207 Statutory Note (emphasis added).  The burden of showing it is falls to Plaintiff Noll.  *Carley v. Crest Pumping Techs*., *LLC*, 890 F.3d 575, 580 (5th Cir. 2018).

Noll argues that pulling stales is interstate commerce for purposes of the TCA exception because the Distributor Agreement obligates the distributors to remove the stale product from customers' shelves and, consequently, "the chain of interstate commerce was never broken …., but rather completed an intended, final leg of movement that originated outside Maine."   Opposition at 12.

Upon further consideration, I conclude that, although the transportation of stales, standing alone, likely would not be the kind of transportation activity that would come within the Secretary of Transportation's MCA jurisdiction to regulate interstate transportation, when the transportation of stales is considered in light of a "fair" reading of the FLSA's small vehicle exception, *Encino Motorcars*, *LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018), it is nonetheless transportation "in interstate commerce," which is all that the plain language of the TCA exception requires.  In other words, when I consider the plain language of the TCA exception, it seems to me that Congress expressed its intention to afford FLSA overtime for workers when their transportation is in a non-commercial vehicle and comes within Congress's power to regulate interstate commerce.  Nothing in the plain language of the TCA suggests to me that Congress intended to muddy up the meaning of interstate commerce by incorporating Department of Labor regulations that attempt to differentiate between internodal intrastate transportation that completes an interstate shipment (which would come within the Secretary of Transportation's jurisdiction), and intrastate transportation that is not in the service of an interstate shipper.

When Congress uses a term like interstate commerce, the logical inference is that it intends to exert its authority over interstate commerce.  "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984). I should "look to agency interpretations only when the statute or regulation remains ambiguous after [I] have employed the traditional tools of construction." *United States v. Lachman*, 387 F.3d 42, 54 (1st Cir. 2004).  Because there is no apparent reason why I should convolute the meaning of interstate commerce by reference to the DOL's interpretation of the DOT's jurisdiction over interstate transportation, I will revisit the issue whether "pulling stales" in a personal vehicle is transportation in interstate commerce.

Supreme Court precedent teaches that the power of Congress to regulate commerce extends to "'the channels of interstate commerce,' 'persons or things in interstate commerce,' and 'those activities that substantially affect interstate commerce.'"  *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 536 (2012) (quoting *United States v. Morrison*, 529 U.S. 598, 609 (2000)).  *See also United States v. Lopez*, 514 U.S. 549, 560 (1995) ("Where economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained.").  When Congress enacted the small vehicle exception, it is fair to interpret its legislative act as extending to transportation activities that substantially affect interstate commerce.  Here, the transportation of stales, when performed in a small vehicle, comes within the TCA's small vehicle exception because it

substantially affects interstate commerce, even though it is entirely intrastate transportation.  Stale perishable products in the stream of commerce are not only brought to a secondary market through this activity, but typically are sold to thrift store outlets that maintain their own accounts with Defendants.[2]  Dep. of Paul Milazzo at 187 (ECF No. 273-3); Dep. of Jake Linthicum at 76 (ECF No. 274-2 (under seal)). This evidence supports a finding that distributors' intrastate transportation of stales affects "the safety of operation of motor vehicles … in transportation on public highways in interstate … commerce," 29 U.S.C. § 207 Statutory Note.  Nothing in the plain language of the TCA exception requires any greater interstate nexus than that.

## B.    Decertification

Defendants argue that pulling stales cannot salvage the collective action.  They observe: "Plaintiffs do not cite to anything in the record that supports this claim of small vehicle use because no such record evidence exists."  Reply at 1 (ECF No. 276).  They further observe: "there is no evidence that this merchandising work on non-delivery days involve[s] Distributors either removing or transporting product from the customers' premises."  *Id.*  Defendants also cite evidence that runs counter to Noll's contention that it is typical for distributors to pull stales on their non-delivery days, let alone to pull them and then transport them in small vehicles.

---

[2] The Distributor Agreement does not allow distributors to sell stales to the public, thought distributors may sell stale products to purchasers for non-human consumption.  Distributor Agreement § 12.3.  The record also reflects that the thrift stores maintain accounts with Defendants so that Defendants receive payment from the thrift stores rather than the distributors.

Jake Linthicum is the Distributor Enablement Operations Coordinator for Lepage Bakeries Park Street.  Mr. Linthicum explains:

> 2.  All bread products have a color tag for Distributors to identify the day of the week the bread product is to be pulled from their customers' shelves or displays.
>
> 3.  The bread product pull code (color of the twist tie) corresponds with one of the five delivery days: Monday, Tuesday, Thursday, Friday and Saturday. The bread does not have an out of code date that falls on either a Sunday or a Wednesday.  Distributors have no reason to pull product or transport out of code product on Sunday or Wednesday.
>
> 4.  If a Distributor does not deliver to a customer on all five delivery days each week it is possible a product's out of code date will occur between delivery days.  In this circumstance, the Distributor has the option to pull any such products from the customers' shelves or displays on the Distributor's regularly scheduled delivery day even if the product is pulled a day or two before it becomes out of code.

Linthicum Decl. (ECF No. 276-2).

Against the picture presented by Mr. Linthicum, Plaintiff Noll has presented evidence demonstrating that the Distributor Agreement requires that stales be pulled from customer shelves (and necessarily transported somewhere), but not any evidence that it is typical of the members of the collective to perform this work in small vehicles.  Instead, Noll relies on the inference that some products "may become out of code on a day that is not a retailer's usual service day; in that case, the Distributor may make a special trip to pull stale to satisfy the 'daily' requirement."  Opposition at 3 (citing Dep. of Paul Milazzo at 204-206 (ECF No. 273-3).  To reinforce just how loose this evidentiary proffer is, consider Noll's primary summation of the evidence:

> The common testimony also shows that Distributors used light vehicles on Wednesdays and Sundays. While pulling and further transporting stale *may have occurred* on Wednesdays and Sundays in light vehicles, the common testimony clearly shows that Distributors performed pull ups in light vehicles, which involves pulling products from the back of the shelves and rotating existing stock on shelves.

Opposition at 14 (emphasis added).  In other words, Noll emphasizes that "the common testimony" reveals that distributors use personal vehicles to travel to certain accounts on two non-delivery days when they pull products from back shelves and rotate stock.  But as to "transporting stale," Noll offers only that it "may have occurred."

What this evidence tells me is that Noll failed to substantiate his contention that the TCA small vehicle exception applies; as in, failed to present a reliable representative sampling from members of the collective, showing that it is typical for distributors to move product (fresh or stale) in their personal vehicles.  This failure may be the product of Noll's assumption that simply using a personal vehicle to get to a customer's store is all that is needed to come within the TCA small vehicle exception.  But as to that point, I agree with Defendants that the TCA exception requires a showing that the small vehicle is used in transportation, not merely that it is used to commute to a job site where job duties are performed.  After all, the small vehicle exception is worded in precisely that manner, requiring that the employee's work affect "the safety of operation of motor vehicles weighing 10,000 pounds or less *in transportation* on public highways in interstate … commerce."  29 U.S.C. § 207 Statutory Note.  Consequently, a given distributor would not

be entitled to FLSA overtime wages unless he or she, in a given week, not only personally[3] worked in excess of 40 hours but also used a personal vehicle to transport Defendants' product (fresh or stale).  Unfortunately for the members of the collective action, Noll has not supplied the kind of representative evidence – *either through his summary judgment statements or through his opposition to the current motion to decertify* – that would warrant a collective proceeding.

Magistrate Judge Nivison has summarized the kind of showing required to justify a collective trial based on representative evidence:

> Plaintiffs must demonstrate that they are similarly situated to the other members of the conditionally certified action, and they must produce "'more than just allegations and affidavits' demonstrating similarity in order to achieve final certification." *Frye v. Baptist Mem'l Hosp*., *Inc*., 495 Fed.Appx. 669, 671 (6th Cir. 2012) (quoting *Morgan v. Family Dollar Stores*, *Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008)).

> The "overriding question" is whether the original plaintiffs and the opt-in plaintiffs are "similarly situated." *Thiessen v. Gen. Elec. Capital Corp*., 267 F.3d 1095, 1102 (10th Cir. 2001).  In order to serve the interest of judicial economy and prevent abuse, the similarity among plaintiffs to a collective action must relate to more than just "job duties and pay provisions." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1262 (11th Cir. 2008); *White v. Osmose*, *Inc*., 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002).

> The three factors that are typically used to assess the similarity of potential plaintiffs in a collective action are: the plaintiffs' employment settings, the individual defenses available to the defendant that may require individualized proof, and fairness and procedural considerations.  *Id*.; *Morgan*, 551 F.3d at 1261.  Although these three factors are commonly considered, certification involves an ad hoc consideration of all relevant factors, made on a case-by-case basis. *Mott v. Driveline Retail Merch*., *Inc*., No. 2:12-cv-05244, 2014 WL 2115469, at *3 (E.D. Pa. May 21, 2014).

---

[3] Some distributors employ others to perform their duties.

> If the Court concludes that Plaintiffs are similarly situated, the action proceeds collectively; otherwise, "the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative[s] may proceed on [their] own claims." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).

*Saunders v. Getchell Agency Inc*., No. 1:13-CV-00244-JDL, 2014 WL 12539643, at *2–3 (D. Me. Dec. 12, 2014), *report and recommendation adopted*, 2015 WL 1292594 (D. Me. Mar. 23, 2015).

Although this case involves several questions common to the class that can be resolved on representative evidence, Plaintiff Noll has failed to demonstrate that the TCA exception to the MCA defense – the issue for which Plaintiff bears the burden – is anything other than thoroughly individualized.  Instead, Plaintiff has relied on evidence that the members of the collective are subject to the same job duties and pay provisions (i.e., the same Distributor Agreement).  I am not persuaded that this is enough.  Indeed, on this record, I cannot say what a typical TCA exception presentation will look like, or who the representatives might be.  This not only calls for decertification of the existing collective action, but also undermines any inclination I might have had, on another showing, to amend the certification order to shrink the collective to include only those distributors who used personal vehicles to transport Defendants' product.  I suspect such a showing might be possible, but not on the summary judgment and certification presentations made by Mr. Noll.

## CONCLUSION

Defendants' Motion for Decertification of the FLSA Collective Action (ECF No. 268) is **GRANTED**.  The FLSA and Declaratory Judgment claims of the Opt-In Plaintiffs are **DISMISSED WITHOUT PREJUDICE**. Plaintiff Timothy Noll's FLSA and Declaratory Judgment claim is **DISMISSED WITH PREJUDICE**, based on his failure to substantiate his own recourse to the TCA exception in opposition to Defendants' summary judgment motion.

**SO ORDERED.**

**Dated this 3rd day of August, 2020.**

/s/ Lance E. Walker
UNITED STATES DISTRICT JUDGE