IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| TIMOTHY NOLL, individually and on Behalf of all similarly situated individuals,<br><br>        Plaintiff,<br>v.<br><br>FLOWERS FOODS, INC., LEPAGE BAKERIES PARK STREET LLC, and CK SALES CO., LLC,<br><br>        Defendants. | Civil Action No. 1:15-cv-00493-JAW |

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON
COUNT IV CLAIM FOR ALLEGED IMPROPER DEDUCTIONS UNDER
26 M.R.S. §629 AND INCORPORATED MEMORANDUM OF LAW**

B0105552.35

# TABLE OF CONTENTS

PAGE

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ...............................................1

II.     RELEVANT FACTUAL BACKGROUND...................................................................2

III.    ARGUMENT ........................................................................................................5

        A.    Plaintiffs' Claim With Respect to Certain Deductions Must Be
              Dismissed as a Matter of Law Because the Deductions Are Expressly
              Permitted by Section 629 .........................................................................5

              1.    Deductions for Plaintiffs' Territory Notes and Vehicle Loan
                    Payments Are Permissible Pursuant to § 629(1) Because They
                    Are Loans        ...................................................................................5

              2.    Deductions for Vehicle Leases Are Permissible as "Debts"
                    Incurred For Plaintiffs' Benefit Pursuant to ME. REV. STAT
                    § 629(1) and (2) ..............................................................................7

              3.    Plaintiffs' Sick and Accident, Health and Life Insurance Premium
                    Deductions Are Also Expressly Permitted by ME. REV. STAT.
                    § 629(1) and Therefore Are Permissible...........................................8

              4.    Plaintiffs' Warehouse Fees Are For Rent and Are
                    Therefore Permissible Deductions Under § 629(1) .........................9

        B.    Even If Defendant(s) Improperly Deducted Any Of Plaintiffs'
              Authorized Payments From Their Weekly Settlement, The "Penalty"
              Is Limited To The Company Returning The Improperly Deducted
              Amounts To Plaintiff(s) ...........................................................................9

              1.    Section 629(3) Expressly States The Employer's "Penalty"
                    For Improper Deductions...............................................................10

              2.    The Legislative History Also Makes Clear That The Liquidated
                    Damage Provision Set Forth In Section 626-A Applies Solely To
                    Judgments For Unpaid Wages, Not Improper Deductions ...........12

                    a.    The Legislature Enacted The Original Section 629 In 1935.
                          The Legislature Added The Employer Penalty At Issue In
                          1981, and That Penalty Remains Unchanged, Even With
                          Four Subsequent Amendments As Recently As 2007 ..........13

i

3.    Case Law Also Makes Clear The Legislature Intended Liquidated
Damages To Apply Solely To Unpaid Wage Judgments, Not
Improper Deductions ....................................................................................17

CONCLUSION.....................................................................................................................19

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants Flowers Foods, Inc., Lepage Bakeries Park Street, LLC, and CK Sales Co., LLC (collectively, "Defendants") hereby move for partial summary judgment on Plaintiffs'[1] remaining state law claim under Count IV of the Complaint for certain of the alleged improper deductions.  More specifically, even if Plaintiffs are held to be employees under state law, which Defendants deny, Plaintiffs' claim that deductions for (1) territory loans and vehicle purchase or lease agreements; (2) sick and accident benefits, health insurance and life insurance premiums under group plans; and (3) the warehouse fee are improper, must be dismissed as a matter of law. There is no dispute that each Plaintiff provided written authorizations for such deductions as is expressly permitted by 26 M.R.S. §629(1).[2]  Defendants also seek an order dismissing Plaintiffs' request for liquidated damages and attorney's fees because such remedies are not available for alleged improper deductions as a matter of law.  Even if Plaintiffs are deemed employees, and assuming *arguendo* any deductions are improper, Defendants would be liable to Plaintiffs only for the amounts improperly deducted, even if Plaintiffs remain liable to pay such amounts.  Plaintiffs may not recover liquidated damages or attorneys' fees for this claim.  26 M.R.S.A. §629(3); *see also Beckwith v. United Parcel Service, Inc.* 889 F.2d 344 (1st Cir. 1989).

The grounds for this Motion are more fully set forth in the following incorporated Memorandum of Law, Defendants' Statement of Undisputed Material Facts, and the Declarations of Jake Linthicum and Charles Palmer Rich filed herewith.

---

[1] Because a class has been certified for this claim, the term "Plaintiffs" will be used throughout to refer to Plaintiff Noll and those Maine distributors in the certified class.

[2] Defendants are not seeking dismissal of Plaintiffs' claim for other deductions such as deductions for administrative fees and temporary territory service fees.

## II.    RELEVANT FACTUAL BACKGROUND[3]

Plaintiffs, through their own independent businesses, entered into written Distributor Agreements with Defendant CK Sales Co., LLC ("CK Sales")[4] under which they purchase(d) distribution rights to sell and distribute products in defined geographic territories.  *SOMF ¶1.* Plaintiffs can purchase these distribution rights (also referred to as "territories") in several different ways: outright in cash; through financing they arrange with a lender of their choice; or through financing with Flowers Finance, LLC ("FLOFIN"), a related entity to Defendant Flowers Foods. Most distributors in Maine finance their territories through FLOFIN.  *SOMF ¶3.*

Plaintiffs who finance the purchase of their distribution rights through FLOFIN sign a Secured Promissory Note ("territory note").  This territory note outlines the loan amount, interest rate and payment terms, and specifically authorizes CK Sales to deduct from Plaintiffs' weekly settlement statements the territory note payments and to forward such payments to FLOFIN. *SOMF ¶4.*  More specifically, under the territory note, Plaintiffs agree: "DISTRIBUTOR authorizes COMPANY [CK Sales] or its affiliates to withhold from amounts payable to DISTRIBUTOR by COMPANY under the Distributor Agreement one fifty-second of the annual payment of principal and accrued interest due on this Note each week of each month, and to pay such amounts on a weekly basis to the FLOFIN in accordance with the terms of the Note in satisfaction of the amounts owed under the Note."  *SOMF ¶5.*

From September 2013 to October 2020, approximately 137 distributors in Maine financed the purchase of their distribution rights through FLOFIN and had weekly deductions taken from their settlement statements for their territory note payments.  *SOMF ¶6.*

---

[3] In keeping with the Court's instruction to limit the instant motion to the alleged improper deductions, Defendants have limited the background facts to this issue.
[4] CK Sales is a wholly-owned subsidiary of Lepage Bakeries Park Street, LLC. ("Lepage").  *SOMF ¶2.*  (CK Sales and Lepage being referred to as "Defendants" herein).

Upon satisfaction of the territory notes, Plaintiffs own the distribution rights unencumbered. ***SOMF ¶7.*** Because Plaintiffs own the distribution rights, they also gain the benefit of any new or increased business in their territories and can build additional equity. ***SOMF ¶8.*** Under the Distributor Agreement, Plaintiffs are also free to sell their distribution rights, in whole or in part, to other distributors or to other third parties at any price they choose. Plaintiffs retain the proceeds from a subsequent sale of their distribution rights after their territory notes and any other applicable fees are paid off. ***SOMF ¶9.***

Under the Distributor Agreement, Plaintiffs are also responsible for providing their own delivery vehicles. ***SOMF ¶10.*** Plaintiffs determine the type of vehicle to use and can purchase these vehicles on their own or obtain their own outside financing. ***SOMF ¶11.*** Defendants make available to Plaintiffs the option to finance the purchase of the vehicle through The Prestwick Lending Group, LLC ("Prestwick"). Plaintiffs can lease a vehicle on their own. Defendants also make third-party vehicle leasing options available to Plaintiffs through Regions Bank ("Regions") and Bank of America (all three together referred to as "lenders"). ***SOMF ¶12.*** **(**Prestwick, Regions and Bank of America hereinafter referred to as "lenders.").

Distributors are free to determine whether to use these lenders, obtain their own lender or financing, or purchase the vehicles on their own in cash. ***SOMF ¶13.*** If Plaintiffs use the lenders made available through Defendants, they sign a lease or loan agreement directly with the lender, setting forth the total number of payments, term of the loan or lease, amount financed, payment amount and payment terms, and interest rate, if applicable, among other things. ***SOMF ¶14.*** If Plaintiffs lease the vehicles, they are typically given the option to purchase the vehicle outright at the end of the lease. ***SOMF ¶15.*** Plaintiffs also sign a Letter of Instruction authorizing CK Sales to deduct these loan or lease payment amounts from their weekly settlement and then make the

loan or lease payments on their behalf to the lenders. *SOMF ¶16.* CK Sales then deducts the loan and lease payments from Plaintiffs' settlement and forwards the payments to the lenders on their behalf. *SOMF ¶17.*

Plaintiffs are free to use their vehicles for business unrelated to their distributorships. *SOMF ¶18.* Plaintiffs who have purchased their vehicles are free to sell the vehicles at any time, at any price they set or negotiate with the buyer, and they retain the net proceeds from any sale. *SOMF ¶19.* Plaintiffs are not required to sell the vehicles to Defendants. *SOMF ¶20.*

Plaintiffs are also offered the opportunity to purchase coverage in certain group insurance plans when they become distributors, including life insurance, short-term disability and long-term disability insurance, accidental death and dismemberment insurance, and medical, dental and vision insurance. *SOMF ¶21.* These products are offered through third-party insurance carriers and election of any of the insurance offerings is wholly voluntary. *SOMF ¶22.* If a Plaintiff elects any of the group insurance offerings, s/he signs a Pay Authorization Agreement authorizing CK Sales to deduct the applicable premium amounts from their weekly settlement. CK Sales then pays these premiums on Plaintiffs' behalf directly to the third party offering the insurance options. *SOMF ¶23.*

Under the Distributor Agreement Plaintiffs also agree to pay a "warehouse fee" each week, which is also deducted from their weekly settlement. *SOMF ¶24.* This warehouse fee represents a charge for Plaintiffs' use of space in the warehouse for their trucks when loading products. *SOMF ¶25.*

Plaintiffs also sign or agree to be bound by a Settlement Statement Authorization authorizing Defendants to deduct various expenses from their settlement each week. This includes

(for example) the warehouse fee, territory note, vehicle lease or loan, and any life insurance or group sick, accident and health insurance premiums for insurances they elected.  **SOMF ¶26.**

## III.    ARGUMENT

### A.    Plaintiffs' Claim With Respect to Certain Deductions Must Be Dismissed as a Matter of Law Because the Deductions Are Expressly Permitted by Section 629

Plaintiff's Count IV (ECF No. 1, ¶¶ 73-82) alleges Defendants made deductions from Plaintiffs' "wages" beyond those permitted in 26 M. R. S. § 629(1).  An improper deduction under Section 629(1) is compensation that is "returned to" the employer "as a condition of securing or retaining employment" for any reason other than those enumerated in Section 629(1).  The permissible deductions falling within the enumerated categories include: 1) "a loan, debt or advance;" 2) "sick or accident benefits, or life or group insurance premiums, that an employee has agreed to pay;" and 3) "rent, light or water expense of a company-owned house or building." Section 629(1) expressly permits several of the deductions Plaintiffs challenge, including deductions for Plaintiffs' payments to third parties for territory notes and vehicle purchase or lease agreements; sick and accident benefits and health insurance under group plans, and life insurance premiums; and the warehouse fee.  Accordingly, Plaintiffs' claim that such deductions are improper under Section 629(1) must be dismissed as a matter of law.

### 1.    Deductions for Plaintiffs' Territory Notes and Vehicle Loan Payments Are Permissible Pursuant to § 629(1) Because They Are Loans

Plaintiffs may enter into two different types of loans: the Secured Promissory Note to purchase distribution rights and a loan to secure the purchase of a vehicle.  The Secured Promissory Note outlines the loan amount, interest rate and payment terms, and specifically authorizes CK Sales or its affiliates to deduct money from Plaintiffs' settlement for Secured Promissory Note payments.  If Plaintiffs choose to secure a vehicle through the options made available by

Defendants, the vehicle loan agreements they sign likewise contain the payment amounts, payment terms, interest rates as applicable, and other applicable items, such as the option to purchase.

Importantly, the loan payment deductions are neither required "as a condition of securing or retaining employment" nor are they "returned to" Defendants. The Defendants merely serve as an agent of Plaintiffs to facilitate Plaintiffs' payment of the loans to third parties. These undisputed facts are by themselves sufficient to warrant summary judgment in favor of Defendants. Nonetheless, as discussed below, even if the loan payment deductions were required as a condition of employment, and were actually returned to the Defendants, Section 629(1) still expressly permits such deductions. As this Court noted in granting Defendants' earlier motion for partial summary judgment, "Maine's rules of statutory interpretation require that words in a statute be given 'their plain, common, and ordinary meaning.' *Palmieri v. Nynex Long Distance Co.*, 437 F.3d 111, 116 (1st Cir. 2006)." *Noll v. Flowers Foods, Inc.*, 345 F.Supp. 3d 345, 356 (2020). *See also Kaplar v. Kaplar*, 2000 ME 131, ¶ 17, 755 A.2d 502, 508 (Me. 2000) (internal citations omitted) ("[t]he fundamental rule in statutory construction is that words must be given their plain ordinary meaning."). Thus, the term "loan" in Section 629(1) must be given its plain, common and ordinary meaning. Black's Law Dictionary defines "loan" as "a thing lent for the borrower's temporary use, especially a sum of money lent at interest. (11th ed. (2019)). Merriam-Webster defines "loan" as "money lent at interest." (Merriam-Webster.com. 2020. https://www.merriam-webster.com (October 20, 2020)).

The territory notes and the loans represent money lent to and/or paid by Plaintiffs, over time, at interest, to secure the use and ownership of something of value (*i.e.,* the ownership of distribution rights and the ownership of vehicles). Under Black's Law Dictionary, Merriam-Webster and common usage, the deductions for Plaintiffs' territory note and vehicle payments are

loans that are permissible under § 629(1).[5]  As such, the Court should find that Plaintiffs cannot recover damages for any monies deducted from their weekly settlements for territory payments or vehicle payments as a matter of law.

> **2.      Deductions for Vehicle Leases Are Permissible as "Debts" Incurred For Plaintiffs' Benefit Pursuant to ME. REV. STAT § 629(1) and (2)**

Deductions for vehicle lease payments are also permissible as "debts" for the Plaintiffs' benefit.  Under Section 629(2), "debts" that are for items for the benefit of the employee can be deducted.[6]  "Under Black's Law Dictionary, "debt" means "a specific sum of money due by agreement or otherwise" (11th ed. (2019)) or, per Merriam-Webster, "something, typically money, that is owed or due."  (https://www.merriam-webster.com (Oct. 20, 2020)).

The legislative history of Section 629 makes clear that "the employee must receive some benefit in order to give rise to a debt" under the statute.  (Statement of Fact to Committee Amendment to 629(2), Apr. 30, 1981).  In support of the "debt" language in § 629(2), the Director of the Bureau of Labor Standards provided an example of a debt that was for the benefit of the employer and thus not permissible: namely, where employees of construction flagging companies were forced to buy walkie-talkies from the company and then to sell them back to the company at discounted rates upon termination.  (Testimony of William A. Peabody in support of L.D. 1086, Mar. 28, 2007).  Director Peabody also testified that in examining whether a tool of the trade is a valid debt pursuant to 629(1), the primary considerations include, in pertinent part, whether this is something an employee could use outside of the workplace.  No law prohibits employers from requiring employees to use their own vehicles in the course of their employment.  In fact, employee

---

[5] For the same reasons, following the Black's Law Dictionary definition, vehicle leases are also loans permitted under the statute because they represent payments for a "thing lent for a borrower's temporary use" for a fee.
[6] Similarly, the loan payments represent debts for the benefit of the employee.

use of personal vehicles in the course of work is common throughout society, including for outside salespeople and employees who must travel between work locations.

Here, the lease deduction is clearly a debt for Plaintiffs' benefit, rather than "a tool of the trade primarily for the convenience of the employer." Section 629(2). As discussed above, Plaintiffs are free to obtain vehicles of their choice from whatever source they would like, including either in cash or through their own financing. Accordingly, the third party leasing opportunities are available for the Plaintiffs' convenience and not primarily for the Defendants. Plaintiffs are not required to enter into these leases as a condition of "employment". Also, just as with the loans, Defendants do not retain lease related deductions. They are paid to the third party lenders. In addition, Defendants do not place any restrictions on Plaintiffs' use of the leased vehicles and could not do so as they are not a party to the lease agreements. Plaintiffs can use the vehicles for business unrelated to the operation of their distributorships. Because these vehicle lease payments are "debts" made for the Plaintiffs' benefit, the lease payment deductions are likewise permitted by the statute.

**3.    Plaintiffs' Sick and Accident, Health and Life Insurance Premium Deductions Are Also Expressly Permitted by ME. REV. STAT. § 629(1) and Therefore Are Permissible**

Section 629(1) permits deductions from pay for "sick or accident benefits [and] life or group insurance premiums that an employee has agreed to pay." Here, Plaintiffs are offered the opportunity to participate in group insurance plans for sick and accident benefits along with life insurance, medical, dental and vision insurance. Plaintiffs sign a Pay Authorization Agreement and Settlement Statement Authorization authorizing Defendants to deduct premiums from Plaintiffs' settlement and then pay it on their behalf to these vendors, clearly noting Plaintiffs'

agreement to pay the same.  As such, because these deductions are permissible under §629(1), as a matter of law, Plaintiffs cannot recover damages for any monies withheld for this purpose.

### 4. Plaintiffs' Warehouse Fees Are For Rent and Are Therefore Permissible Deductions Under § 629(1)

Finally, § 629(1) permits deductions from compensation paid to Plaintiffs for "rent, light or water expense of a company-owned house or building."  Plaintiffs' warehouse fee represents a fee for Plaintiffs' use of Defendants' warehouse space to load the products onto Plaintiffs' vehicles.  (ECF no. 225-2, p. 9, ¶ 11.1.)  Per Black's Law Dictionary, rent means "Consideration paid, usu. or periodically, for the use or occupancy of property (esp. real property)."  (11th ed. (2019)).  The warehouse fee here is specifically earmarked for Plaintiffs' use of warehouse space to load their products.  As such, because deductions for the warehouse fee are permissible under §629(1), Plaintiffs likewise cannot recover damages for any amounts withheld for this purpose as a matter of law.

### B. Even If Defendant(s) Improperly Deducted Any of Plaintiffs' Authorized Payments From Their Weekly Settlement, The "Penalty" Is Limited To The Company Returning The Improperly Deducted Amounts To Plaintiff(s)

As discussed above, the only state law claim that survived summary judgment is a claim for alleged improper deductions and not a claim for unpaid wages.  Predicated on the assumption that Plaintiffs are employees (which Defendants, of course, deny), the Complaint alleges Defendants violated 26 M.R.S. §629(1) "[b]y making [improper] deductions from wages" (**Complaint** at ¶79(c)), and seeks "return of the amounts unlawfully deducted under §629(3), as well as for penalties provided by law under [] §§626-A and 671."[7]  **Complaint** at ¶81.  The Complaint generally seeks "liquidated damages," **Complaint** at Prayer for Relief subsection (l),

---

[7] As set forth more fully under the Court's Summary Judgment Order [Doc. 262], these types of "penalties," are civil fines collectible by the Department of Labor and are not subject to a private cause of action.  **Order** at 30-32.

and attorney's fees.  **Complaint** at Prayer for Relief subsection (n); see also **Complaint** at ¶82 (request for costs and attorney's fees under §626-A and §670).[8]  For the reasons set forth more fully below, neither liquidated damages nor attorney's fees are available for alleged improper deductions.

1.    **Section 629(3) Expressly States The Employer's "Penalty" For Improper Deductions**

Section 629, entitled "Unfair Agreements," prohibits two types of agreements.  First, it prohibits "any person, firm, or corporation from requir[ing] or permit[ting] any person [ ] to work without monetary compensation…"  26 M.R.A. §629(1).  Second, it prohibits agreements, "oral, written or implied, that a part of the compensation [paid] be returned to the person, firm, or corporation for any reason" other than those reasons stated as permissible.  **Id.**  Plaintiffs allege they are employees and if so, that deductions from their weekly compensation "returned" to their employer were/are improper.  Section 629(3) expressly states the employer's "Penalty" for any such improper deductions:

> "**Penalty.** An employer is liable to an employee for the amount returned to the employer by that employee as prohibited in this section. ***§629(3)***.

As discussed above, "[t]he cardinal rule of statutory construction is that when the words of the Legislature are clear, they are to be given their plain meaning and further judicial interpretation is not necessary."  **Bureau of Employee Relations v. Me. Labor Relations Bd.,** 611 A.2d 59, 61 (Me.1992).  In the case at bar, the Legislature's words could be no clearer.  Had the Legislature intended the employer's liability to the employee for improper deductions to include liquidated damages and attorney's fees, it clearly could have said so.  It did not.

---

[8] Section 670 falls within Maine's minimum wage law, Title 26, subchapter 3, §§661 -673.  Because Plaintiffs' claim for overtime is dismissed with prejudice, §670 is not applicable.

Moreover, application of this cardinal rule of statutory construction does not give rise to an "absurd, illogical, or inconsistent" result." *State v. Conroy*, 2020 ME 22, ¶ 19, 225 A.3d 1011. To the contrary, as set forth more fully below, when consideration is given to the entire statutory scheme, application of the cardinal rule gives effect to the Legislature's expressed intent under §629 and achieves a "harmonious result" with all provisions of subchapter 2.[9]    *Town of N. Yarmouth v. Moulton*, 1998 ME 96, ¶ 5, 710 A.2d 252.

Employers who make "unfair agreements," either requiring work without compensation or improper deductions, are subject to a monetary fine for each violation.[10]   The additional penalty for an unfair deduction agreement -----meaning a deduction not expressly permitted---- is the employer's return to the employee of the amount improperly deducted, even when the employee is lawfully obligated to pay the amount.  Given that the employee may still lawfully owe the money improperly deducted, it was rational for the Legislature to limit the penalty to fines and the return of the money deducted.

Unlike a claim for improper deductions, when a person performs work without monetary compensation in violation of §629, that event gives rise to an action for unpaid wages.  *Cooper v. Springfield Terminal Ry. Co.,* 635 A. 2d 952, 955 (1993)(unpaid wages are owed when an employer does not pay an employee for work in violation of §629's prohibition against agreements to work for no monetary compensation as a condition of securing or retaining employment). Actions for unpaid wages are addressed both under Maine's minimum wage law, Title 26, subchapter 3, §§661 -673 ("Minimum Wage Law"), and under Maine's wage and medium of payment law, subchapter 2, §§621 to 639 ("Wages Act").  Liquidated damage and attorney's fee

---

[9] Subchapter 2: Wages and Medium of Payment, §§621 to 639.
[10] As set forth more fully *infra*, the initial law imposed criminal liability upon the employer punishable by a fine for making an "unfair wage agreement."  Laws 1935, c. 155; LD 84; ND LD 836.

provisions are limited to actions for unpaid wages as set forth in §626, §626-A and §670.[11]  As demonstrated by these laws, when the Legislature intended the employer penalty to include liquidated damages and attorney's fees, the Legislature clearly expressed its intent.  It is only a judgment for *unpaid wages* that is subject to liquidated damages, albeit different multiples.  *See* 26 M.R.S. §670 *cf* 26 M.R.S 626-A.[12]  Deductions are not unpaid wages.  It is axiomatic that for deductions to be made the employer first must pay wages to the employee.[13]  Otherwise, there is no sum from which to deduct.

In summary, the meaning of § 629(3) is clear, in addition to any fine, the penalty to the employer is the employer's return to the employee of the amount the employer improperly deducted.  Because the words of the Legislature are clear, they must to be "given their plain meaning and further judicial interpretation is not necessary."  ***Bureau of Employee Relations v. Me. Labor Relations Bd.,*** 611 A.2d 59, 61 (Me.1992).

### 2. The Legislative History Also Makes Clear That The Liquidated Damage Provision Set Forth In Section 626-A Applies Solely To Judgments For Unpaid Wages, Not Improper Deductions

Although the Complaint quotes the penalty provision of §629(3) and seeks return of the amounts alleged to be improper deductions, Plaintiffs now seek liquidated damages and attorney

---

[11] Section 670 initially enacted as part of the minimum wage law in 1959 by P.L. 1959, c.362 (codified originally as RS 1954, c. 30, §§132-A to 132-J and recodified as §670 with the 1964 codification of the Maine statutes, included a liquidated damage equal to one time the amount of unpaid wages and attorney's fee provision.  Section 626 (Cessation of Employment) enacted in 1961 by Laws 1961, c. 95; LD 47, two years after §670 (Minimum Wage Law), initially did not include a liquidated damage or attorney's fee provision.  Section 626-A originally enacted in 1975 by Laws 1975, c. 113, §5 was initially proposed with the same liquidated damage and attorney's fee provision as §670 but passed with a liquidated damage provision equal to twice the amount of the judgment for unpaid wages and an attorney's fee provision.  In 1983, a liquidated damage and attorney's fee provision was added to §626.  The liquidated damage is equal to twice the amount of the judgment for unpaid wages.  Laws 1983, c. 162; LD 547.
[12] As set forth more fully *infra,* if the Court deems it necessary to look to legislative history to discern the Legislature's intent, the Legislature's 1993 amendment of §626-A makes it patently clear that the Legislature intended liquidated damages to apply solely to judgments for unpaid wages.
[13] The legislative scheme clearly distinguishes between unpaid wages in 626-A, underpaid wages in Section 670 and deductions from paid wages in Section 629.  ***Cf, Giguere v. Port Resources Inc.,*** 927 F.3d 43, 52 (1st Cir. 2019).

fees, presumably under §626-A, although the Complaint also references §670.[14]  Only if the statute is "susceptible of different meanings" and therefore ambiguous (***Packgen, Inc. v. Bernstein, Shur, Sawyer & Nelson, P.A.,*** 2019 ME 90, ¶ 21, 209 A.3d 116) should the Court look to extrinsic indicia of legislative intent, such as the legislative history of the statute, to ascertain the Legislature's intent in enacting the statute.  ***In re Child of Nicholas P.***, 2019 ME 152, ¶ 32, 218 A.3d 247.  Should the Court deem §626-A ambiguous as to its application to §629, the Court may consider the legislative history of §629 and if deemed necessary then also the legislative history of §626-A, as an aid to ascertain the Legislature's intent with respect to improper deductions.

> **a.  The Legislature Enacted the Original Section 629 In 1935.  The Legislature Added The Employer Penalty At Issue In 1981, and That Penalty Remains Unchanged, Even With Four Subsequent Amendments As Recently As 2007**

Section 629 was initially enacted by Laws 1935, c. 155; LD 84; ND LD 836: An Act Relating To Payment of Wages.  The Legislature amended R.S., c.54 by adding a new section 40-A entitled "Unfair wage agreements forbidden; penalty."  Although the law then applied only to a limited type of employment "in any factory, work shop, manufacturing or mercantile establishment" the Legislature deemed the same two types of agreements to be unfair: an agreement to work without monetary compensation and an agreement "that part of such compensation should be returned to the person, firm or corporation for any reason" other than those listed as permissible.[15]  §40-A.  The second paragraph of §40-A read: Any person, firm or corporation violating any of the above provisions shall be punished by a fine…for each offense."

---

[14] The only references in the Complaint to §626-A and 670 are in ¶¶81 and 82.  Paragraph 81 sought liquidated damages under §§626-A and 670 for "unpaid earned compensation" for overtime.  As set forth *supra,* Plaintiff's Count IV state law claim for overtime was dismissed with prejudice, leaving only Plaintiff's claim for improper deductions.  Paragraph 82 of Count IV makes a generic reference to recovery of attorney's fees under §626-A and §670.  Since there is no surviving claim for overtime, §670 is not applicable.

[15] The initial bill was twice amended before passing.  The amendments dealt with the reasons for which compensation could be returned to the employer by the employee (permissible deductions from wages paid).

In 1959, by Laws 1959, c. 62: LD 445, the Legislature deleted "in any factory, work shop, manufacturing or mercantile establishment," making the section applicable to all types of employment, but expressly excepted from its application "work performed in agriculture or in or about a private home."   R.S., c. 30, §53.   The Legislature passed this amendment without comments or debate.   The second paragraph imposing a fine as punishment for a violation remained unchanged.

In 1981, by Laws 1981, c. 285, LD 1081, the Legislature added a new paragraph 2 (defining Debt) and a new paragraph 3 (employer liability for improper deductions).   The paragraph 2 amendment defined the type of debt for which an employer may make a deduction.   The word "debt" means a benefit to the employee.   The Statement of Fact to Committee Amendment A to H.P. 915, L.D. 1081 stated:

> The purpose of this amendment is to clarify the specific exclusions listed in the bill. The amendment makes clear that checks written by the employee himself, or his own dishonored credit cards, might constitute a 'debt' to the employer. This simply reflects the general rule stated earlier, that the employee must receive some benefit in order to give rise to a debt.

Paragraph 3 established for the first time employer liability to the employee for improper deductions and read: "An employer shall be liable to the employees for the amount returned to the employer as prohibited by this section."   The Statement of Fact to LD 1081 stated:

> A recent court case found the statutory language regarding unfair agreements under the employment practices laws to be <u>unclear and ambiguous</u>.   The court was particularly concerned that the law be clear where criminal liability is imposed on a defendant, as the statute at the time of the case did impose.   <u>While [ ] section 629 no longer imposes a criminal liability, the need remains to clarify the language of this statute</u>.   (emphasis added)

To the extent Plaintiffs assert the plain language of §629(3) is not sufficient to discern the Legislature's intent, which it clearly is, this legislative history solidifies the Legislature's intent to hold the employer liable to the employee only for the amount improperly deducted from wages.

This intent is bolstered by the fact that the employer remained subject to a "fine" for each violation, although it was no longer a criminal sanction.

In 1983, by Laws 1983, c.652, §5, LD 1986, the last paragraph of §629, imposing a fine for each violation, was deleted, but at the same time under a different amendment relocated to the first paragraph of §626-A and grouped together with other sections of subchapter 2 for which an employer would be subject to pay, in effect, a civil penalty for violation.  By Laws 1983, c. 652, LD 1902 (An Act to Amend the Cessation of Employment Law),[16] the first paragraph of §626-A inserted "628[17] and 629" and substituted "subject to a forfeiture" for "punishment by a fine."

The Legislature's purpose for adding §§628 and 629 to the first paragraph of §626-A was to group together the sections of subchapter two (then existing)[18] for which a civil penalty is imposed for a violation and to make the amount of the civil penalty the same for each.  The additional amendments to §626-A made under Laws 1983, c. 652, LD 1902, made clear that the Department of Labor can bring both a civil cause of action for the forfeiture (civil penalty) and a civil cause of action for *unpaid wages* in the same proceeding.  The Legislature further authorized the Department of Labor to collect the judgment on behalf of the employees and to collect fines incurred through violations of this subchapter.

The reference to §629 in the first paragraph applies solely to forfeitures (civil penalties) the Department of Labor collects in a civil cause of action for forfeiture.  The liquidated damage and attorney's fee provision in the second paragraph of §626-A expressly applies solely to judgments entered in favor of an employee for *unpaid wages*.  As discussed, *supra,* improper

---

[16] Section §626.

[17] Equal Pay law.

[18] In 1993, by Laws 1993, c. 648, §1, LD 1843 the first paragraph of §626-A added reference to §629-B (employee health benefit plans).  In 1999, by Laws 1999, c. 465, §5, LD 292, the first paragraph substituted "sections 621-A to 623" for "sections 621 to 623" (frequency of pay periods and full payment for work within those pay periods).  In 2019, by Laws 2019, c. 35; LD 278, §5 added reference to §628-A (compensation history inquiry prohibited).

deductions are not unpaid wages.  The penalty for improper deductions remains set forth under §629(3).

The Legislature's intent is further buttressed by the 1993 amendment to §626-A.  By Laws 1993, c. 648, §1, LD 1843 the first paragraph of §626-A added reference to §629-B (Employee health benefit plans) for imposition of a civil penalty.  The second paragraph of §626-A, was amended to provide for the first time that the employer is liable to the employee not just for unpaid wages <u>but for unpaid health benefits</u>.  However, upon a judgment being rendered in favor of an employee, <u>in an action to recover unpaid wages or health benefits</u> under subchapter 2, such judgment includes, in addition to the unpaid wages or health benefits adjudged to be due [ ] "an additional amount equal to twice the amount of <u>unpaid wages</u> as liquidated damages."  §626-A (*emphasis supplied*).  Although an employee may recover attorney's fees on a judgment for unpaid health benefits, there is no liquidated damages on a judgment for unpaid health benefits.

If the Legislature had intended to include in the second paragraph of §626-A actions for recovery of improper deductions under §629, it could easily have added the words improper deductions when it added the words unpaid health benefits.  It did not.  Instead, it continued to expressly provide the remedy for an improper deduction under §629(3) to the return of the amount improperly deducted.

The Legislature's policy decision makes perfect sense.  The employer has not failed to pay wages.  The employee may even still have a legal obligation to the employer or a third party for the amount deducted.  But, unless the deduction is permissible under §629, the employee's obligation cannot be satisfied through a payroll deduction.

3. **Case Law Also Makes Clear the Legislature Intended Liquidated Damages To Apply Solely To Unpaid Wage Judgments, Not Improper Deductions**

Both the Law Court and the United States Court of Appeals for the First Circuit have interpreted § 629. Their interpretations further support the conclusion that liquidated damages are only available for unpaid wages and are not available for improper deductions.

Improper deductions were squarely at issue in *Beckwith v. United Parcel Service, Inc.* 889 F.2d 344 (1st Cir. 1989). The First Circuit affirmed the District's Court's determination that a judgment for improper deductions is not subject to liquidated damages and attorney's fees under §626-A.[19]

In *Beckwith*, the plaintiff argued that the liquidated damage and attorney's fee provision contained in the second paragraph of 626-A applied to 629 solely because 629 was listed in the first paragraph. The Court of Appeals disagreed and reasoned in part that,

> The first paragraph of § 626–A, which contains the reference to § 629, also mentions, *inter alia,* § 626, which establishes standards for payment of wages to employees who are leaving their jobs. The Maine legislature in 1983 *added* a penalty provision to § 626 that contains the identical liquidated damages and attorney's fee remedies that are contained in the second paragraph of § 626–A. If the second paragraph of § 626–A were intended to apply to [626] listed in its first paragraph, the 1983 amendment to § 626 would be superfluous.

*Beckwith v. United Parcel Service, Inc.,* 889 F.2d. at 350.

> The absence of an amendment to § 629 similar to that made to § 626 suggests that the legislature intended the remedy for § 629 to be the more limited one explicitly provided within that section. This approach is consistent with the principle that a specific remedial provision generally should be given controlling force over a general one contained in another statute that otherwise might provide a remedy. *See Beaulieu v. City of Lewiston,* 440 A.2d 334, 345 (Me.1982); *Cumberland Farms Northern, Inc. v. Maine Milk Commission,* 428 A.2d 869, 873 (Me.1981).

---

[19] The First Circuit's opinion did not extend to the disjunctive provision of § 629 concerning "work without monetary compensation," which the First Circuit stated at note 12 that "it may be that violations of this latter aspect of §629 would involve 'unpaid wages,' and thus liquidated damages and attorney's fees," but offered no opinion. That question remained unresolved by the *Beckwith* decision. *Beckwith v. United Parcel Service, Inc.* 889 F.2d 344, n.12. The Law Court resolved that issue in *Cooper.*

*Id.*

The Court of Appeals also analyzed the statutory language, noting the text of § 629 distinguishes between wages not paid and compensation *returned.*

> [T]he second paragraph of § 626–A refers to claims for "unpaid wages" while the relevant portion of § 629 contemplates "a scenario in which compensation *paid* to the employee is *returned* to the employer, as a condition of employment." (Emphasis in original.)  The court emphasized the difference between an employer failing to pay an employee for work performed and an employer who requires payment *to* the employer out of earned wages. … <u>if the legislature had meant to include claims for returned wages, as well as unpaid wages, it would have phrased the second paragraph [of 626-A] differently.</u>  (emphasis added)

*Beckwith v. United Parcel Service, Inc.,* 889 F.2d. at 350.

Plaintiffs are expected to argue that the Law Court, in *Cooper v. Springfield Terminal Ry. Co*. 635 A. 2d 952, overruled *Beckwith.*  The Law Court did not do so.  *Beckwith* remains good law.  In *Cooper,* the Law Court reviewed the disjunctive provision of §629 concerning "work without monetary compensation" and applied §626-A liquidated damages to a violation of §629 for unpaid wages, not improper deductions.  In that case, the defendant was requiring the plaintiffs to work without monetary compensation to qualify for new positions by training without pay in violation of §629's prohibition against work without monetary compensation.  *Cooper*, 635 A. 2d. at 955.  The Law Court reasoned that liquidated damages and attorney's fees apply to "an action brought under this subchapter of which 629 is a part" and that the second paragraph of 626-A "specifically makes employers liable for 'unpaid wages' which is precisely what is owing when an employer does not pay an employee for work."  *Id.* at 955.  In other words, a plaintiff may bring an action under § 626-A to recover unpaid wages for work without compensation under § 629.  *Cooper* does not in any way hold that an action under § 626-A may be pursued for improper deductions under § 629, which is the claim at bar.

The Legislature's intent is further buttressed by the 2007 amendments to section 629. The Legislature amended Section 629 three more times in 2007 by Laws 2007, c.357, §1, LD 1086 (added the third sentence to the second paragraph and made no substantive changes); c. 415, §1, LD1915 (Rewrote the section); and c.542, §, LD 2205 (repealed and reenacted as amended by Laws 2007, c.357, §1, LD 1086 and repealed and replaced by c. 415, §1). Throughout each 2007 amendment,[20] §629(3) remained unchanged.[21] There can be no doubt from this legislative history that the Legislature's inclusion of §629 in the first paragraph of §626-A was solely with respect to civil penalties and the collection thereof by the Department of Labor, which could also bring an action for *unpaid wages*, if applicable.

## CONCLUSION

Based on the above and foregoing reasons, Defendants respectfully request the Court grant the instant motion and dismiss with prejudice that portion of Count IV alleging a violation of §629(1) for deductions expressly permitted thereunder, namely deductions for (1) territory loans and vehicle purchase or lease agreements; (2) sick and accident benefits, life insurance, medical, dental and vision insurance; and (3) the warehouse fee. Defendants further request the Court dismiss with prejudice Plaintiffs' new claim for liquidated damages and attorney's fees for improper deduction. Based on the plain language of §629(3), legislative history, as well as case

---

[20] The legislature further clarified that debt does not include employee uniforms but permitted a deduction from wages for cleaning if the employee chooses to have a payroll deduction for cleaning under a written agreement with the employer. The remaining changes addressed fair share employees. To avoid termination of employment of Maine State employees who declined to pay their "fair share" of union service expenses, the legislature expressly authorized public employers to deduct from the employee's pay, service fees owed by an employee to a collective bargaining agent without signed written authorization from the employee. The same as private employees the deductions are from wages paid. If the public employer makes an improper deduction, the public employee has the same remedy as the private employee. The public employer is liable to the public employee for the amount improperly deducted.

[21] It was under the 2007 amendments that the Legislature added numerical paragraphs and captions. The caption added to Paragraph 3 is "Penalty," a clear indicium of the Legislature's intent. No substantive changes were otherwise made to paragraph 3.

law interpreting the same, the penalty to Defendants, if deemed employers, and the remedy to Plaintiffs, if employees, is limited to the return to Plaintiffs of the amounts improperly deducted.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7(e), Defendants respectfully request the opportunity for oral argument on Defendants' Motion for Partial Summary Judgment on Count IV Claim for Alleged Improper Deductions Under 26 M.R.S. §629 (and Incorporated Memorandum of Law).

Dated: October 30, 2020

Respectfully submitted,

Flowers Foods, Inc., Lepage Bakeries Park Street, LLC and CK Sales Co., LLC,

By their attorneys,


 /s/ Frederick B. Finberg
Peter Bennett, Esquire
Frederick B. Finberg, Esquire
Joanne Simonelli, Esquire
The Bennett Law Firm, P.A.
75 Market  Street, Suite 201
Portland, ME  04101
(207) 773-4775

and

Kevin P. Hishta, Esquire
C. Garner Sanford, Jr., Esquire
A. Craig Cleland, Esquire
Ogletree, Deakins, Nash, Smoak & Stewart
191 Peachtree St., NE, Suite 4800
Atlanta, GA 30303
(404) 881-1300

Margaret S. Hanrahan, Esquire
Ogletree, Deakins, Nash, Smoak & Stewart
201 South College Street, Suite 2300
Charlotte, NC 28244
(704) 342-2588

## CERTIFICATE OF SERVICE

I, Frederick B. Finberg, hereby certify that on October 30, 2020, I filed the foregoing via the Court's CM/ECF system.  The CM/ECF system will provide service of such filing(s) via Notice of Electronic Filing (NEF) to all counsel of record.


 /s/ Frederick B. Finberg
Frederick B. Finberg