## UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | | |
|---|---|---|
| **TIMOTHY NOLL, et al.,** | ) | |
| | ) | |
| **PLAINTIFFS** | ) | |
| | ) | |
| **V.** | ) | **1:15-CV-00493-LEW** |
| | ) | |
| **FLOWERS FOODS, INC., et al.,** | ) | |
| | ) | |
| **DEFENDANTS** | ) | |

## <u>DECISION AND ORDER</u>

In this action, Plaintiff Timothy Noll alleges on behalf of himself and the Rule 23 class that Defendants Flowers Foods, LePage Bakeries, and CK Sales Company make unlawful deductions from employee pay in violation of state law, "including, but not limited to, deductions for warehouse fees, fuel, stale product, vehicle payments, inventory charges, 'charge backs,' and distributor fees." Complaint, Count IV (citing, inter alia, 26 M.R.S. §§ 621-A, 626-A, 629(1)).

The matter is before the Court on Defendants' Motion for Partial Summary Judgment on Count IV (ECF No. 294). Defendants contend that, "even if Plaintiffs are held to be employees under state law," *id.* at 4, certain (but not all) pay deductions of record are "expressly permitted" by Maine law, *id.* at 5. Defendants otherwise contend that the statutory remedy for an unlawful deduction is merely reimbursement. *Id.* at 9.

# BACKGROUND[1]

The relationship between Plaintiff Timothy Noll and the class members, on the one hand, and Defendants, on the other, is the product of Distributor Agreements extended to the class members by and countersigned by Defendant CK Sales Co., LLC, a subsidiary of Lepage Bakeries Park Street, LLC. As conceived in the Distributor Agreements, distributors are independent contractors who service their own distribution territories in their own delivery trucks, fulfilling their customers' orders for baked goods manufactured by Defendants Flowers Foods and Lepage Bakeries Park Street.

Plaintiff contends the class members are employees by operation of Maine law, not independent contractors, and that certain deductions Defendants make from the class members' weekly pay are unlawful given this reality. Through the pending Motion for Partial Summary Judgment, Defendants argue that wage deductions made for territory payments, delivery truck payments, and warehouse fees are lawful even if the class members are employees. [2]

## Territory payments

To enter into a distribution agreement with CK Sales, the class members were required to purchase their respective territorial rights. "Most"[3] pay or paid for their

---

[1] The summary judgment facts are drawn from the parties' statements of material facts submitted in accordance with District of Maine Local Rule 56.

[2] Although Defendants also challenge the class members' ability to pursue a claim related to deductions to pay insurance premiums, Plaintiff disavows any claim based on premium deductions for insurance programs. Opposition at 2 n.3 (ECF No. 298).

[3] From September 2013 to October 2020, approximately 137 distributors in Maine financed the purchase of their distribution rights through FLOFIN and had weekly deductions taken from their settlement statement for their territory note payments. Plaintiff states that all but one distributor financed the purchase of distribution rights through FLOFIN.

territories by securing financing from Flowers Finance, LLC ("FLOFIN"), an entity distinct from but related to Flowers Foods. This financing is formalized with a secured promissory note bearing interest for a set term. The note includes language stating that CK Sales may deduct the note payments from distributors' weekly settlement statements and make the payments to FLOFIN on their behalf.

According to the Distributor Agreement, distributors accrue an equity stake in their territories over time by paying down the purchase amount. They have the right to "sell" their interest should they wish to discontinue their relationship with Defendants. Defendants impose restrictions on the sale and have a right of first refusal. How actual sales have worked is not apparent from the summary judgment filings.

## Truck payments

To perform under a Distributor Agreement, a distributor must secure a suitable delivery truck. A distributor is free to secure a suitable truck through independent means or a distributor can finance the purchase or lease of a truck through third party lending institutions that maintain a relationship with Defendants. When a distributor makes use of financing arranged by Defendants, the agreement will include a letter of instruction authorizing CK Sales to deduct weekly truck payments from the distributor's weekly pay and pay the same to the lending institution.

## Warehouse fee

The Distributor Agreement includes a provision obligating distributors to pay a weekly "warehouse fee" (quotation marks supplied by Defendants). According to Defendants, the so-called warehouse fee is a form of "rent" (quotation marks my own)

distributors pay to enjoy the use of space at the warehouse facility for their trucks to park when loading product.

<h1 align="center">DISCUSSION</h1>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As cautioned by the Supreme Court, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247-48 (1986). To raise a genuine issue of material fact, the party opposing the summary judgment motion must demonstrate that the record contains evidence that would permit the finder of fact to resolve the material issues in their favor. *Triangle Trading Co. v. Robroy Indus.*, *Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) ("Unless the party opposing a motion for summary judgment can identify a genuine issue as to a material fact, the motion may end the case.").

**A.      Legality of the Subject Deductions**

As alleged in the Complaint, the remaining claim in Count IV is the following:

74. … Plaintiff and [the] Rule 23 Class members are employees, not independent contractors.

75. It is unlawful under 26 Me. Rev. Stat. § 621-A(1) for an employer to require or permit an employee to work without paying compensation for all hours worked.
….
77. It is unlawful under 26 Me. Rev. Stat. § 629(1) for an employer to make deductions from employee wages except for "payment of a loan, debt or advance made to that person, or for the payment of any merchandise purchased from the employer or for sick or accident benefits, or life or group insurance premiums, excluding compensation insurance, that an employee

has agreed to pay, or for rent, light or water expense of a company-owned house or building."

….

79. Defendants, through their policies and practices described above, willfully violated Maine's Employment Practices Laws throughout the statutory period, and continuing through the present, as follows:

…

> c) By making deductions from wages in violation of 26 Me. Rev. Stat. § 629(1), including, but not limited to, deductions for warehouse fees, fuel, stale product, vehicle payments, inventory charges, "charge backs," and distributor fees;

….

81. As set forth above, the Plaintiffs and other members of the Rule 23 Class have sustained losses in compensation as a proximate result of defendants' violations of Maine Law. Accordingly, the Plaintiffs, on behalf of themselves and the Rule 23 Class members, seek damages in the amount of their unpaid earned compensation, plus liquidated damages, as provided by 26 Me. Rev. Stat. §§ 626-A and 670, for return of the amounts unlawfully deducted under § 629(3), as well as for penalties as provided by law under 26 Me. Rev. Stat. §§ 626-A and 671.

82. Plaintiffs, on behalf of themselves and Rule 23 Class members, seek recovery of their attorneys' fees and costs, as provided by 26 Me. Rev. Stat. §§ 626-A and 670.

In summary, in Count IV Plaintiff Timothy Noll contends the class members are employees and that, as such, making deductions from their wages to pay for the stated items is unlawful, entitling them to all available statutory remedies.

Section 629 of Maine's Employment Practices Statute prohibits certain "unfair agreements":

> A person, firm or corporation may not require or permit any person as a condition of securing or retaining employment to work without monetary compensation or when having an agreement, oral, written or implied, that a part of such compensation should be returned to the person, firm or corporation for any reason other than for the payment of a loan, debt or advance made to the person, or for the payment of any merchandise purchased from the employer or for sick or accident benefits, or life or group insurance premiums, excluding compensation insurance, that an employee has agreed to pay, or for rent, light or water expense of a company-owned

house or building.

26 M.R.S. § 629(1). In effect, and put into the context of this litigation, an employer may

not require its employees to "return" to the employer part of their wages for any reason

other than to pay a loan, debt, advance, or rent.

### 1.    *Warehouse Fee*

Defendants argue that it is lawful for them to charge the class members a fee for use

of the CK Sales warehouses because it is a payment of rent "for use of Defendants'

warehouse space to load the products onto Plaintiffs' vehicles." Motion at 9. Defendants

fail to demonstrate entitlement to judgment as a matter of law on the warehouse fee.

Assuming the class members are employees, an employee does not pay rent for the

privilege to access an employer's facility and perform work for the employer.

### 2.    *Territory Payment*

Defendants argue the territory payment is payment of a loan obtained to acquire a

valuable asset and, therefore, deductions are not prohibited by the statute. Motion at 5-7.

Plaintiff says that while "[i]t is beyond dispute that a loan is merely a type of debt[,]" it is

the "purpose of the loan [that] is essential to the analysis." Opposition at 3. In Plaintiff's

view, the statute does not allow collection of a loan or debt for a territory fee because the

territorial rights are designed to "secure employment and benefit Defendants." *Id.*

The statute defines the term debt, as follows:

> For purposes of this subchapter, "debt" means a benefit to the employee.
> "Debt" does not include items incurred by the employee in the course of the
> employee's work or dealing with customers on the employer's behalf, such
> as cash shortages, inventory shortages, dishonored checks, dishonored credit
> cards, damages to the employer's property in any form or any merchandise
> purchased by a customer. "Debt" does not include uniforms, personal

protective equipment or other tools of the trade that are considered to be primarily for the benefit or convenience of the employer. …

26 M.R.S. § 629(2) (omitting immaterial language related to company uniforms). In short, to qualify as a debt, the transaction must secure a benefit for the employee and not "primarily … benefit … the employer." *Id.*

Defendants fail to demonstrate the absence of a genuine issue of material fact. While they do present a record that invites the supposition that class members are accruing equity and stand to realize "valuable" equity positions even before the territory acquisition debts are paid in full, Defendants have not demonstrated even one scenario in which a class members has, for example, realized a profit from the sale of an equity position.[4] Without that concrete showing of real economic value, Defendants have not demonstrated that the finder of fact could resolve the issue in their favor.[5] They may do so yet, but not through the summary judgment process.

### 3.  *Truck Payment*

Finally, Defendants observe that the delivery trucks are predominantly leased by distributors and, consequently, the related lease payments are authorized debt service under Maine law. Motion at 7-8. Plaintiff argues the trucks are "tools of the trade," "incurred" in the employee's work, and are bound in service to Defendants who "primarily" benefit from

---

[4] Defendants have attached to their Motion an exhibit that appears to commemorate such a transfer, entitled Assignment/Assumption Agreement and Bill of Sale (ECF No. 295-10). However, the document is not executed and Defendants' authenticating witness is Jake Linthicum, whose affidavit merely describes the exhibit as "[a] true and accurate copy of an Assignment & Assumption Agreement." Linthicum Aff. ¶ 20 (ECF No. 295-1).

[5] It is, of course, Plaintiff who bears the ultimate burden, but at summary judgment Defendants must make a showing that removes the issue from contention. They have not done so.

the arrangement. Opposition at 4 (quoting 26 M.R.S. § 629(2)).

The fact that this issue is presented in terms of a lease transaction (which evidently is the predominant choice among distributors) does not tend to give Defendants any advantage but rather, given the standard of review, tends to reinforce the inference that the economic realities associated with the Distributor Agreement place the distributor in the position of financing a vehicle that will only ever be put to commercial use fulfilling Defendants' territorial service expectations. In other words, assuming the class members are employees, Defendants fail to demonstrate the absence of a genuine issue whether the distributors' leasehold on the delivery trucks primarily benefits Defendants.

**B.    Scope of Remedy**

Defendants argue that the remedy for unlawful deductions under § 629 is limited to a refund. Motion at 9-19. Plaintiff contends the class members are also entitled to interest, liquidated damages, and an award of attorney fees, citing language found in § 626-A of the statute. Opposition at 10-18. Alternatively, Plaintiff asks that I certify the question for resolution by the Maine Supreme Judicial Court. *Id.* at 19-20.

Section 626-A, which occupies the same subchapter as § 629, and which is titled "Penalties," is not a model of clarity. It begins with the following sentence: "Whoever violates any of the provisions of sections 621–A to 623 or section 626, 628, 628–A, 629 or 629–B is subject to a forfeiture of not less than $100 nor more than $500 for each violation." 26 M.R.S. § 626-A.

The next sentence, a new paragraph, then introduces a new subject: "Any employer is liable … for the amount of unpaid wages and health benefits." *Id.* This paragraph goes

on to authorize the additional remedies of interest, costs and fees, and "an additional amount equal to twice the amount of unpaid wages as liquidated damages." *Id.*

Flipping forward a few pages, § 629, the substance of which has already been discussed in the preceding discussion section, introduces a new "penalty" provision, which reads: "An employer is liable to an employee for the amount returned to the employer by that employee as prohibited in this section." 26 M.R.S. § 629(3). This language suggests to the reader the possibility that the Legislature intended to supplant the general penalties stated in § 626-A with a specific penalty for the wage "return" scenario.

Under Maine law, the plain language of a statute governs unless the result would be absurd, illogical, unreasonable or inconsistent. *Packgen, Inc. v. Bernstein*, *Shur*, *Sawyer & Nelson*, *P.A.*, 2019 ME 90, ¶ 21, 209 A.3d 116, 122. If the plain language produces such results, or if the language is otherwise ambiguous in meaning or purpose, then a court must consider "legislative history and other indicia of legislative intent." *Id.* (quoting *MaineToday Media*, *Inc. v. State*, 2013 ME 100, ¶ 6, 82 A.3d 104. In this process, the court must "examine the entirety of the statute, giving due weight to design, structure, and purpose as well as to aggregate language" and must "reject interpretations that render some language mere surplusage." *State v. Dubois Livestock*, *Inc.*, 2017 ME 223, ¶ 6, 174 A.3d 308, 311.

The analysis begins with § 626-A. That provision introduces a rather obvious ambiguity due to the separation between the first and second paragraphs. A reader could easily question whether the list of statutory provisions in the first paragraph related to forfeitures applies equally to the second paragraph about employee remedies. However,

the Maine Supreme Judicial Court has already resolved that ambiguity by holding that the list of statutory provisions set out in the first paragraph also applies for purposes of the second paragraph. *Cooper v. Springfield Terminal Ry. Co.*, 635 A.2d 952, 955 (Me. 1993). There is a catch, however. In the wake of *Cooper*, the proper construction of § 626-A is the one that recognizes that employee remedies against employers are indeed available for employer violations of the entire list of statutory provisions found in the first paragraph, provided that the underlying conduct gives rise to a claim for "unpaid wages or benefits," *id.*, and provided that no other statutory provision says otherwise concerning a claim not before the *Cooper* Court.

Turning to § 629, the Legislature introduced a different penalty provision, specific to a very particular kind of harm involving wages "returned to the employer" to pay for things like cash shortages, dishonored check and credit card transactions, and damage occurring to the employer's property.[6] 26 M.R.S. § 629(2), (3). The plain language of that provision states that the penalty for an unlawful wage "return" is for the employer to give the money back to the employee.

This plain language construction does not result in an absurd, illogical, unreasonable, or inconsistent result; assumes there is an aggregate design and structure to this statutory scheme; and heeds the rule that a judicial construction should try to avoid turning such a provision into a mere surplusage. *MaineToday Media*, 2013 ME 100, ¶ 6; *Dubois Livestock*, 2017 ME 223, ¶ 6. Moreover, "[t]his approach is consistent with the

---

[6] Justice Coffin characterized the provision as "prohibit[ing] employers from satisfying claims against their employees through payroll deductions required as a condition of employment." *Beckwith v. United Parcel Serv., Inc.*, 889 F.2d 344, 345 (1st Cir. 1989).

principle that a specific remedial provision generally should be given controlling force over a general one contained in another statute that otherwise might provide a remedy." *Beckwith v. United Parcel Serv., Inc.*, 889 F.2d 344, 350 (1989).[7] Finally, this approach does not "strip section 629 of its effectiveness as a deterrent." *Cooper*, 635 A.2d at 955.

Here, the facts in the summary judgment record do not place the entirety of Plaintiff's "unlawful deduction" claim squarely in the § 629(3) category. The truck payments and the territory payments are made to entities other than Defendants. In other words, by operation of the plain language rule, wages withheld by the employer and sent to a third party are not wages "returned to the employer." Consequently, the special penalty provision of § 629(3) does not apply to the truck payments or the territory acquisition payments. Because it does not apply, those portions of Plaintiff's "unlawful deduction" claim are not governed by § 629(3). Furthermore, if the finder of fact determines that the class members are employees rather than independent contractors, the finder of fact may

---

[7] Plaintiff argues that the Maine Supreme Judicial Court impliedly overruled the First Circuit on this issue of Maine law in *Cooper v. Springfield Terminal Railway Company*, 635 A.2d 952 (Me. 1993). That is not accurate. Rather, the SJC recognized that § 629 addresses more than one kind of claim and it specifically held that a claim involving failure to pay employees for training is subject to the remedies set out in § 626-A because it is a claim for unpaid wages:

> The first paragraph of section 626–A explicitly states that it is applicable to violations of section 629, while the second paragraph provides for the aforementioned penalties in any action brought under the subchapter of which section 629 is a part. Additionally, the second paragraph specifically makes employers liable for "unpaid wages," which is precisely what is owing when an employer does not pay an employee for work. To read section 626–A otherwise and apply only the civil forfeiture provisions contained in the first paragraph to violations of the portion of section 629 at issue here would strip section 629 of its effectiveness as a deterrent.

*Cooper*, 635 A.2d at 955. My construction of the statute in relation to Plaintiff's "unlawful deduction" theory is consistent with both *Cooper* and *Beckwith. See also, cf. Beckwith*, 889 F.2d at 350 (noting that "the legislature may have intended the § 626-A remedies to be available when, and if, appropriate for [other] violations").

also conclude that Defendants' act of withholding wages to send third parties territory-acquisition and truck-lease payments are acts undertaken primarily for Defendants' benefit and result in "unpaid wages." Claims for unpaid wages implicate the full panoply of § 626-A remedies. *Cooper*, 635 A.2d at 955.

That leaves the warehouse fee. Because the warehouse fee is "returned" to Defendants it comes within the special penalty provision of § 629(3). Interest, attorney fees, and liquidated damages are not available for Defendants' "return" of warehouse fees. *Beckwith*, 889 F.2d at 345.

## CONCLUSION

Defendants' Motion for Partial Summary Judgment on Count IV (ECF No. 294) is DENIED IN PART and GRANTED IN PART. Defendants' challenge concerning the scope of remedies available on Count IV is sustained in limited part. The remedy for the alleged unlawful deduction (i.e., "return") of a warehouse fee is limited to a refund.

SO ORDERED.

Dated this 9th day of March, 2021.

/s/ Lance E. Walker
UNITED STATES DISTRICT JUDGE