# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| TIMOTHY NOLL, individually and on behalf of similarly situated individuals, | Court File No. 1:15-cv-00493-LEW |
| Plaintiff, | **JOINT MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT WITH INCORPORATED MEMORANDUM OF LAW** |
| v. | |
| FLOWERS FOODS, INC., LEPAGE BAKERIES PARK STREET, LLC, and CK SALES CO., LLC, | |
| Defendants. | |

## TABLE OF CONTENTS

I.     INTRODUCTION...................................................................................................... 3

II.    factual background .............................................................................................. 5

III.   procedural background ....................................................................................... 6

    A.   The Litigation.................................................................................................. 6

    B.   Settlement Efforts .......................................................................................... 8

    C.   Settlement Agreement.................................................................................... 9

        1.   Monetary Payments ................................................................................ 10

        2.   Repurchase of Distribution Rights, the End of Distributor Agreements in Maine, and Opportunity for Employment.................................................. 11

IV.    the COURT SHOULD preliminarily approve the settlement and permit dissemination of notice ...................................................................................... 12

    A.   The Standard for Preliminary Approval of the Settlement ................................... 12

    B.   The Class Representative and Counsel have Adequately Represented the Class and the Proposal was Negotiated at Arm's Length............................................. 13

        1.   The Parties Reached a Settlement After Years of Extensive Discovery, Briefing and Litigation............................................................................. 13

        2.   The Circumstances Surrounding Settlement Negotiations Support Approval. ................................................................................................ 14

        3.   The Risks of Establishing Liability, Establishing Damages and Maintaining the Class Through Trial Support Approval .......................... 15

4.      The Other 23(e)(2) Factors and *Scovil* Factors Support Preliminary
        Approval of the Settlement. ...................................................... 17

Most of the remaining factors will be evaluated in full at the Final Approval stage.
        For example, the reaction of the class cannot be determined in full until
        the Settlement Class Members have received the notice and the
        opportunity to object or opt-out. In addition, the Court cannot fully
        address the effectiveness of notice until after it has gone out; however,
        Plaintiff is confident that the notice program will be effective, given that it
        relies on Defendants' records. In addition, Plaintiff expects that the
        method of processing claims will be efficient. No Settlement Class
        Member has to affirmatively submit a claim form—those entitled to a
        payment will receive it, unless they opt-out. With respect to attorneys'
        fees, Plaintiff expects the Court will set a briefing schedule for approval of
        Plaintiff's fee request, however, the Court may take note that Defendants
        have agreed to pay fees separate from the Settlement Fund, so as not to
        reduce the fund. Finally, there are no separate agreements in this case,
        other than a preliminary term sheet, which has been attached as an exhibit
        hereto. Accordingly, the Court should find that the remainder of the
        23(e)(2) and *Scovil* factors weigh in favor of preliminary approval......... 17

C.      The Settlement Is Also Reasonable Under the FLSA ........................................... 18

V.      **plaintiff'S proposed class notice program meets the requirements of rule 23(e) ..... 18**

1.      The nature of the action .................................................................. 18

2.      The definition of the class certified; ........................................... 18

3.      The class claims, issues or defenses; ......................................... 19

4.      That a Class Member may enter an appearance through an attorney if the
        member so desires;...................................................................... 19

5.      That the Court will exclude from the class any member who requests
        exclusion, stating when and how members may elect to be excluded; and
        .................................................................................................... 19

6.      That a class judgment will include all members who do not request
        exclusion. ..................................................................................... 19

VI.     **CAFA NOTICE OF THE SETTLEMENT IS REQUIRED ....................................... 20**

VII.    **THE COURT SHOULD SET A FINAL APPROVAL HEARING ........................... 20**

VIII.   **CONCLUSION ............................................................................................. 21**

## I.      INTRODUCTION

Plaintiff Timothy Noll ("Plaintiff"), on behalf of himself and any business entity through which he operated, and on behalf of Settlement Class Members,1 and Flowers Foods, Inc. ("Flowers Foods") and Lepage Bakeries Park Street LLC ("Lepage"), and CK Sales Co., LLC ("CK Sales") (collectively, "Defendants"), submit this Joint Motion for Preliminary Approval of the Class Action Settlement with Incorporated Memorandum of Law

After almost six years of hard-fought litigation involving significant discovery and seven separate mediation sessions, two of which lasted two days, with months of ongoing negotiations, all facilitated by a highly-skilled mediator, Plaintiff, on behalf of himself and any business entity through which he operated, and on behalf of Settlement Class Members and Flowers Foods, Inc. ("Flowers Foods") and Defendants Lepage Bakeries Park Street, LLC and CK Sales Co., LLC (collectively "Lepage") have reached a settlement of this case embodied in a comprehensive Settlement Agreement. The settlement provides substantial monetary compensation to all Settlement Class Members. In addition, the settlement includes non-monetary injunctive relief as described below in more detail.

As discussed more fully below, the settlement creates (i) up to a $9 million settlement fund that provides substantial monetary payments to Settlement Class Members and a Service Award to the Named Plaintiff in the amount of $10,000; and (ii) injunctive relief in the form of the repurchase of all Distribution rights and the opportunity for Maine Distributors to work for Lepage (or an affiliated entity) as employees in the position of route sales representatives, provided they otherwise qualify for employment and are interested. Defendants will terminate the Distributor Agreements of Current Distributor Settlement Class Members, repurchase distribution rights for the sum of ten (10) times average weekly branded sales calculated over a 52-week period preceding the date of repurchase, and will pay this sum net the balance of any outstanding territory notes.

Many Current Distributor Settlement Class Members will realize substantial capital gains in the value of the distribution rights as part of the repurchase. Defendants estimate the repurchase payments to Settlement Class Members in Maine will total approximately $3.3 million, an amount that is in addition to the settlement fund. Current Distributor Class Members who work for Lepage in Maine as route sales representatives provided they are otherwise qualified for employment will be entitled to valuable employment benefits (health benefits, retirement benefits, etc.). Importantly, Defendants have agreed to pay Attorneys' Fees separately and in addition to a settlement fund up to $9 million, so as not to reduce the amount available to Settlement Class Members. In addition, Defendants will pay the costs of notice and settlement administration separately. In all, the Settlement totals approximately $20 million.

The Parties view the Settlement as a desirable alternative to the uncertainty, expense, and delay that would result from further litigation. At the same time, Plaintiffs' Counsel believe the settlement achieves an excellent result and is in the best interests of the Settlement Class Members, and the Parties believe it should ultimately be approved by the Court as fair, reasonable, and adequate in all respects. As discussed below, the settlement unquestionably satisfies the requirements of Rule 23(e)(2) and the FLSA. As such, the Parties respectfully request that the Court: (1) grant preliminary approval of the proposed settlement; (2) approve Atticus Administration as the Settlement Administrator; (3) approve the form, content, and method, and distribution of the Settlement Notice to Settlement Class Members; (4) direct that notice under the Class Action Fairness Act of 2005 ("CAFA") be issued to appropriate state and federal officials; (5) set a briefing schedule for: the joint motion for final approval, Class Counsel's motion for attorneys' fees and Named Plaintiff's motion for a Service Award; and (6) schedule a fairness hearing to consider final approval of the proposed settlement.

## II.    FACTUAL BACKGROUND

In 2012, Lepage became one of Flowers Foods' wholly-owned subsidiaries that bakes and produces various baked goods, including packaged breads, rolls, and cakes.  Since late 2013, Lepage contracts with independent distributors, including Maine distributors, like the Plaintiff, who purchase distribution rights to sell and distribute products to customers in defined territories. Distributors enter into Distributor Agreements with Lepage whereby they are classified as independent contractors. *See* Doc. 262 at 4.

Plaintiff and the Class allege that distributor job responsibilities and the reality of the distributors' working relationship with Defendants demonstrate that they are employees of one or more Defendants. For example, Plaintiff alleges that distributors are required to arrive at specified warehouses at specified times to stock their delivery vehicles with Defendants' products. Doc. 191 at 12-13. Plaintiff also alleges that distributors are responsible for delivering these products to customers at times and places specified by Defendants. *Id.* at 15-16. Moreover, Plaintiff asserts that he and other distributors had no ownership or entrepreneurial influence over their day-to-day activities, including sale prices, shelf space within retailer locations, orders, product selection, schedules, delivery locations and the like. *Id.* at 18-20.

Defendants deny these allegations, contend that distributors are responsible for controlling the manner, method, and means of performance of their distributorship duties, and contend that distributors have discretion over product selection, orders, price, shelf space, service times and the like, although the amount of discretion they have may vary depending on the type of account at issue. *See generally* Doc. 194 at 4-19.

Distributors are responsible for the expenses they incur operating their distributorships. *See* Doc. 307 at 2. Some of these expenses were deducted from distributors' weekly settlement. Distributors' weekly settlement statements outline sales to customer accounts less the various

deductions made, resulting in a net settlement amount Lepage pays distributors (or that distributors may pay Lepage in certain circumstances). Doc 191 at 14.

Because Lepage classifies distributors as independent contractors, they are not paid overtime for hours worked over 40 in a workweek. *See* Doc. 191 at 2. Accordingly, Plaintiff sought to recover unpaid overtime wages for all hours worked over forty per week during the relevant period under the FLSA and Maine law, as applicable. Plaintiff also sought reimbursement for the deductions that Plaintiff contends were deducted unlawfully under Maine law. At all times, Defendants have denied Plaintiff's allegations, denied that they violated the law in any way, and denied that Plaintiff or the certified Class are entitled to the damages they seek.

## III.    PROCEDURAL BACKGROUND

### A.    The Litigation

Plaintiff filed this Action on December 3, 2015, against Defendants on behalf of himself and a class of current and former distributors alleging that Defendants misclassified Maine distributors as independent contractors in violation of the FLSA, 29 U.S.C. § 201, *et seq.*; the Maine Independent Contractor Law, 26 Me. Rev. Stat. §§ 1043(11)(E) and 591-A; Maine Employment Practices Laws, 26 Me. Rev. Stat. §§ 621 *et seq.* and 661 *et seq*; Maine common law; and sought Declaratory Judgment pursuant to 28 U.S.C. § 2201 and 14 Me. Rev. Stat. §§ 5951 *et seq.*

Each of Plaintiff's claims are premised on the allegation that Defendants improperly classified Maine distributors as independent contractors rather than employees. Plaintiff claimed damages in the form of unpaid overtime for hours worked over forty in a week under the FLSA as well as alleged unlawful deductions and unpaid overtime under Maine law.

On January 20, 2017, this Court granted Plaintiff's motion for conditional certification of this case pursuant to § 216(b) of the FLSA. Doc. 81. The FLSA Collective Class was defined as

"All persons who are or have performed work as Distributors for Flowers Foods, Inc., Lepage Bakeries Park Street LLC, and/or CK Sales Co., LLC in the state of Maine under a Distributor Agreement or a similar written contract that they entered into during the period commencing three years prior to the date of the filing of the Complaint in this case or December 3, 2012 and continuing through the close of the Court-determined opt-in period."

Following conditional certification, the Parties engaged in extensive discovery, involving documents productions totaling hundreds of thousands of pages, hundreds of interrogatories and requests for production to each FLSA Opt-in Plaintiff, and numerous depositions of both Defendants' witnesses, including an extensive 30(b)(6) deposition, as well as almost a dozen depositions of Opt-in Plaintiffs.

On October 9, 2018, Plaintiff moved for class certification, and Defendants moved to decertify the collective action. Doc. 190, 191. On January 15, 2019, the Court granted Plaintiff's motion and denied Defendants' motion. Doc. 202. On April 3, 2019, the First Circuit Court of Appeals denied Defendants' request to appeal the class certification order. Doc. 221. On May 31, 2019, the Parties cross-moved for partial summary judgment on various aspects of their claims and defenses. Doc. 224, 230. On January 29, 2020, the Court denied Plaintiff's motion and granted Defendants' motion in part. Doc. 262. The Court found that the Maine Outside Sales Exemption barred Plaintiff's state law overtime claim and held that the Motor Carrier Act overtime exemption applied to Plaintiff and FLSA opt-in Plaintiffs. The Court further held that the exemption under the Technical Corrections Act was a plaintiff-by-plaintiff determination and invited Defendants to file a new motion to decertify the FLSA collective action. Defendants did so, and on August 3, 2020, after briefing, the Court granted Defendants' motion to decertify the FLSA Collective

Action. Doc. 277. After the Court's ruling on decertification, approximately two-thirds of the opt-in plaintiffs filed new individual FLSA overtime claims via two new cases in the District of Maine.

In addition, the Court allowed Defendants to file a second round of summary judgment briefs regarding Plaintiff's deduction claim, limited to the issues of which deductions were recoverable and whether treble damages were recoverable if Plaintiff prevailed on his underlying misclassification claim. Doc. 292. In its March 9, 2021 Order, the Court denied in part Defendants' motion for summary judgment, which sought to dismiss and/or limit the remedy regarding class members' deductions claim with respect to territory fees, truck leases, and warehouse fees. Doc. 307.  The Court noted with regard to territory fees and truck leases, that a jury may still resolve those issues in favor of Defendants but there remained genuine issues of material fact. In addition, the Court held that to the extent a jury found that class members were misclassified as independent contractors, the territory payments and truck lease payments would be subject to the full scope of penalties under 26 M.R.S. § 626-A, which includes interest, costs and fees, and an "additional amount equal to twice the amount of unpaid wages as liquidated damages." *Id.* With respect to the warehouse fee, the Court agreed with Defendants and held this was subject to reimbursement only. *Id.*

Next, the Court placed this case on the Trial Calendar for August 2021. Doc. 308. In June 2021, the Court continued the trial by 60 to 90 days, in order to allow the Parties to continue to work to resolve this matter. Doc. 310. This case settled as trial approached, after extensive and hard-fought litigation by both sides.

### B.      Settlement Efforts

The Parties have engaged in significant settlement discussions for more than two years, while continuing to litigate this case. On May 5-6, 2019, the Parties held their first formal mediation. The Parties engaged Michael E. Dickstein of Dickstein Dispute Resolution to facilitate

and assist in their arm's length negotiations. Mr. Dickstein is a highly skilled mediator who has mediated more than 600 class and collective actions across North America.

The May 2019 mediation was an omnibus mediation covering this action as well as three other actions in North Carolina, Vermont, and Pennsylvania, then pending against Defendant Flowers Foods and its subsidiaries. Each of these cases involved the threshold issue of independent contractor/employment classification of distributors as well as claims for overtime and unauthorized deductions under the FLSA and applicable state laws. While the time allocated to mediation included all four cases, the Parties negotiated and evaluated the claims asserted, and defenses available, in each case individually.

The Parties met again from June 13-14, 2019, but were unable to resolve this case, and decided to proceed with summary judgment motions. During this time, they mediated this case a third time along with the Vermont case on December 9, 2019, in San Francisco. The mediation spanned the entire day without a settlement. Thereafter, the Parties declared an impasse and focused all efforts on preparing the case for trial.

After the Court's rulings on the two rounds of motions, however, the Parties decided to mediate again, via Zoom, in April 2021, May 2021, and June 2021, as the settlement efforts gained momentum including regarding the non-monetary relief contained in this settlement. In late July 2021, the Parties mediated the case a final time, via Zoom, before Mr. Dickstein. It was only after this last session that the Parties were able to reach a comprehensive agreement. The key terms of the Settlement Agreement entered into by the Parties in this Action are detailed below.

### C.    Settlement Agreement

The Settlement Agreement provides substantial monetary and non-monetary relief to Plaintiff, the Rule 23 Class Members, and the FLSA Plaintiffs. Specifically, the following persons are eligible to participate in the settlement: any individual who, either individually or on behalf of

a corporation or business entity: (1) operated under a Distributor Agreement with CK Sales/Lepage during the Covered Period[1] in the State of Maine; and/or (2) is a *Bowen* or *Aucoin* Plaintiff (also referred to as "FLSA Plaintiffs")[2]; or (3) is Named Plaintiff Timothy Noll.

### 1. Monetary Payments

The Settlement Agreement provides significant monetary relief to participating Settlement Class Members. Specifically, Defendants have agreed to create a non-reversionary settlement fund of up to $9 million, which provides (i) payments to Settlement Class Members; and (ii) a Service Award to the Named Plaintiff in the amount of $10,000. The Settlement Notices describe the process by which a Settlement Class Member may exclude himself from the Settlement or an FLSA Plaintiff may withdraw from the lawsuit in which he is currently named.[3]  Importantly, no Settlement Class Member will be required to submit an additional claim form to receive a share of the Settlement Fund. The payments will be automatic.

The Settlement Fund shall be allocated as follows:

Step 1: For Class Members or FLSA Plaintiffs who had more than one territory at some point during the class period, select the territory with the highest gross sales and discard sales (but not deductions) data from the smaller territory(ies).

Step 2: Calculate FLSA overtime shares by multiplying the number of weeks each FLSA Plaintiff worked during the two-year statute of limitations period by 55 hours, then divide that FLSA Plaintiff's gross sales by that product. If the quotient is less than $1,000, round up to $1,000.

---

[1] The Covered Period is defined generally in the Settlement Agreement as December 2, 2012 through the date of preliminary approval, however, the Period will be calculated on an individual basis for each Settlement Class Member, using the dates each individual was a distributor and any other relevant information.

[2] The FLSA Plaintiffs are: Michael Bowen, Michael A. Campbell, Jeffrey Clark, Clifford Cyr, Michael Deschenes, Ernest Dore, Jeffrey Gagne, David Googins, Thomas Herrin, Paul Roy, James Snow, Stephen M. Temm, Richard Veilleux, Nicholas Aucoin, Michael Barlow, Normand Belanger, Jason Britton, Allen Burns, Peter Carr, Daniel Cofone, Denis Crepeau, Richard Curran, Edward Henningsen, Jr., Michael Mendes, Jeffrey Smith, Roger Swedberg, and Gary White.

[3] A Class Member who is not an FLSA Plaintiff, with the exception of the Named Plaintiff, will not waive any FLSA Claims.  If a FLSA Plaintiff withdraws from his FLSA lawsuit/excludes himself from this case, he will not be entitled to any portion of the Settlement Fund.

Step 3: Calculate each Class Member's state wage deduction damages by adding the dollar amount of the Class Member's warehouse fee, territory payment, administrative fee, shrink, and stale payments during the applicable statute of limitations.

Step 4: Reduce the common fund by the sum of all FLSA damages calculated in steps 1 through 4.

Step 5: Apportion the remaining money on a pro rata basis for each Class Member for wage deduction damages.

Step 6: Verify results. The sum of all Class Member and FLSA Plaintiff payments must equal $9,000,000.

FLSA Plaintiffs who operate multiple territories shall collect monies allocated to alleged overtime on only one territory.

### 2. Repurchase of Distribution Rights, the End of Distributor Agreements in Maine, and Opportunity for Employment

In addition to the monetary payments, the Parties have agreed to injunctive relief as part of the settlement pursuant to Rule 23(b)(2), which will apply to all Current Distributors in Maine whether they exclude themselves from the Settlement or not. Specifically, the Parties have agreed that within six months of the Final Approval of the Settlement, Defendants will terminate all Distributor Agreements with Maine Distributors, and repurchase the distribution rights covered by such Distributor Agreements. All current Distributors will have the opportunity to work for Lepage as employees in the position of route sales representatives, provided they otherwise qualify for employment and are interested. Upon termination of each Distributor Agreement, Lepage will buy back the distribution rights for the sum of ten (10) times the average weekly branded sales calculated over a 52-week period preceding the date of repurchase and will pay this sum net of the balance of any outstanding territory notes issued by FLOFIN.[4] Based on this formula, the cost of the repurchase program in Maine is approximately $3.3 million. In addition, Distributors who work for Lepage as route sales representatives will be eligible for employment benefits consistent with the benefits Lepage provides employees (health benefits, retirement benefits, etc.), and the rights

---

[4] If a distributor's territory value is less than an outstanding FLOFIN note, Lepage will not seek repayment of this deficit.

and protections of employment status under state law. The Parties will develop an extended schedule for termination of the Distributor Agreements in the event a certain number of current Distributors indicate they are not interested in working for Lepage.

## IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AND PERMIT DISSEMINATION OF NOTICE

As outlined above, the proposed settlement is the product of extensive, arm's length negotiations between experienced counsel with the assistance of a highly-qualified mediator. Furthermore, the proposed settlement is fair and reasonable considering the risks Plaintiff, FLSA Plaintiffs, and Class Members face in connection with continued litigation over liability, proof of damages and class membership, and other defenses asserted by Defendants. Accordingly, the Parties request the Court preliminary approve the settlement.

### A.    The Standard for Preliminary Approval of the Settlement

Federal Rule of Civil Procedure 23(e) requires court approval of any settlement of a class action. Court approval of a class action involves a two-step process. *See Anderson v. Team Prior, Inc.*, No. 2:19-cv-00452, 2021 WL 3852720, at *4 (D. Me. Aug. 27, 2021). Pursuant to the Rule, the court must determine whether it "will likely be able" to approve the settlement. Fed. R. Civ. P. 23(e)(1). Thereafter, following notice to class members, the court will determine whether the settlement is "fair, reasonable, and adequate," considering the following factors:

A. The class representatives and class counsel have adequately represented the class;

B. The proposal was negotiated at arm's length;

C. The relief provided for the class is adequate, taking into account:

a. The costs, risks, and delay of trial and appeal;

b. The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      c.   The terms of any proposed award of attorney's fees, including timing of

          payment; and

      d.   Any agreement required to be identified under Rule 23(e)(3); and

   D.  The proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition to the 23(e)(2) factors, the Court may decide also look to the *Scovil* factors, which overlap in substantial part, but are: (1) comparison of the proposed settlement with the likely result of litigation; (2) stage of the litigation and the amount of discovery completed; (3) reaction of the class to the settlement; (4) quality of counsel; (5) conduct of the negotiations; (6) prospects of the case, including risk, complexity, expense and duration. *Scovil v. FedEx Ground Pkg. Sys., Inc.*, No. 1:10-cv-515, 2014 WL 1057079, at *2 (D. Me. Mar. 14, 2014).

At the preliminary approval stage, a proposed settlement of a class action may be given preliminary approval, "where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other deficiencies, and where the settlement appears to fall within the range of possible approval." *Anderson*, 2021 WL 3852720, at *5. If the parties negotiated at arm's length and conducted sufficient discovery, the district court should presume the settlement is reasonable. *In re Pharm. Indus. Avg. Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009).

**B.**    **The Class Representative and Counsel have Adequately Represented the Class and the Proposal was Negotiated at Arm's Length.**

      **1.**    **The Parties Reached a Settlement After Years of Extensive Discovery, Briefing and Litigation**

First, the stage of the litigation at the time settlement was reached, the amount of discovery conducted, and the quality of Counsel supports preliminary approval of the Settlement. As discussed above, the Parties have been ardently litigating this case for almost six years, engaging

in extensive discovery and motion practice. Plaintiff's Counsel conducted substantial discovery, including reviewing and analyzing hundreds of thousands of pages of documents, and taking all the necessary depositions to establish the facts for trial regarding Defendants' business model, the bakery delivery business, and the nature of distributors' work. This included taking individual depositions of corporate witnesses, both from Flowers Foods and Lepage Bakeries, as well as an extensive 30(b)(6) deposition of each Defendant with numerous corporate designees. Additionally, in order to increase efficiency, the parties stipulated to include the testimony of certain corporate witnesses in other related cases. Through discovery and motion practice, including two rounds of summary judgment briefing, Plaintiff's Counsel was able to fully analyze the merits of Plaintiff's claims, the strength of Defendants' defenses, and the risks they faced in proving liability and damages. Furthermore, this case is on the eve of trial. *Compare Curtis*, 2016 WL 3072247, at *2 (finding sixteen months of discovery sufficient). Plaintiff's Counsel's depth of knowledge regarding this case specifically, and Flowers' business model generally, and their experience with class actions involving employment classification issues across the Country, also demonstrate that Counsel have adequately represented the Class and the FLSA Plaintiffs and have an informed basis upon which to make the determination that this Settlement is in the best interests of class members. *Compare Scovil*, 2014 WL 1057079, at *4 (noting Plaintiffs' Counsel's representation of classes in nearly identical suits in other cases).

### 2. The Circumstances Surrounding Settlement Negotiations Support Approval.

Here, the circumstances surrounding the Settlement establishes that it was reached at arm's length and without collusion. As discussed above, it took years for the Parties to reach a comprehensive agreement in this case, and only did so after the Court clarified and narrowed the scope of this case through its rulings on two separate sets of summary judgment motions. In total,

the Parties engaged in seven separate, some multi-day, mediation sessions with an experienced mediator, and continued negotiations throughout this time period through countless emails and calls between Counsel and the mediator. This case was the last of Plaintiff's Counsel's cases against Flowers Foods and its subsidiaries to be settled, because of substantial disagreements between the Parties. Given this history, as well as the outcome of the settlement, the Court should have no concern regarding collusion here.

> **3.      The Risks of Establishing Liability, Establishing Damages and Maintaining the Class Through Trial Support Approval**

To determine if a settlement is adequate, the Court considers a variety of factors, most important of which is the cost, risks, and delay associated with going to trial.

There is a policy of encouraging class action settlements. *Durrett v. Housing Auth.*, 896 F.2d 600, 604 (1st Cir. 1990). Achieving settlement in such cases is not easy; district judges must realistically evaluate settlements based on the circumstances of the case.  *In re Pharm.*, 588 F.3d at 36. Here, the amount of monetary recovery combined with the significance of the injunctive relief, strongly supports preliminary approval of the Settlement, particularly when compared to the costs, risks, and delay associated with continuing to litigate not only this case, but the *Bowen* and *Aucoin* cases as well, which were filed as a result of the Court's Order in this case decertifying the collective action.

Plaintiff filed this case asserting claims for overtime and unlawful deductions. Plaintiff believes he obtained substantial evidence proving that distributors were misclassified as independent contractors under Maine law, and thus believes he would prevail on the threshold question of employment status. Defendants, of course, deny that Plaintiff would prevail on this question, and continue to assert a vigorous defense.

Plaintiff also believes that the Class has strong claims for recovering unpaid overtime and illegally withheld deductions. At present, only the unlawful deductions claims remain in the *Noll* case. The state law overtime claims were dismissed and the FLSA Collective action was decertified. Approximately two-thirds of the FLSA plaintiffs filed their individual FLSA overtime claims in two new actions, distinguished by Plaintiffs who used their personal vehicles to transport product, and those who did not per this Court's ruling on decertification. While Plaintiff and FLSA Plaintiffs believe they would ultimately prevail on the merits of their overtime claim under state and federal law, these issues must be resolved by the First Circuit. Accordingly, Plaintiffs acknowledge the risks, particularly on the overtime claims. On the other hand, Plaintiffs believe that given the Court's ruling on Plaintiff's deductions claims, including affirming the applicability of treble damages, these represent the most significant category of damages, and pose the greatest risks for Defendants.

Given all of these factors, both sides face significant risks and costs moving forward to trial and the inevitable appeals in this case and the *Bowen* and *Aucoin* cases. A final resolution through litigation would likely not be realized for several more years. Both parties have a strong interest in avoiding the uncertainty and delay of further litigation and resolving this case.

The Settlement in this case is a fair compromise of the claims involved, considering the risks discussed above. As discussed above, the Settlement creates a settlement fund of up to $9 million, which will be allocated to Class Members based upon the formula set forth above. While this sum is less than Plaintiff believes he could recover at trial, particularly on his deductions claims, it represents a significant portion of the alleged damages, and provides a fair discount based on the risks Plaintiff and FLSA Plaintiffs face on their claims. *See Curtis*, 2016 WL 3072247, at *2 (finding settlement amount considered potential weaknesses in Plaintiffs' case). Furthermore,

the injunctive relief related to Lepage's repurchase of distribution rights comes with a quantifiable value of at least $3.3 million, in part representing buyback payments. This cost is above and beyond the $9 million settlement fund. Additionally, Lepage's termination of the Maine Distributor Agreements, the repurchase of the distribution rights, and the current Maine Distributors' opportunity to work for Lepage as employees in the position of route sales representative provided they otherwise qualify for employment, is highly significant and results in unquantifiable benefits to the Class.

For all of these reasons, the Court should find that the settlement falls within the range of possible approval and should grant preliminary approval and authorize notice to the Settlement Class Members.

### 4. The Other 23(e)(2) Factors and *Scovil* Factors Support Preliminary Approval of the Settlement.

Most of the remaining factors will be evaluated in full at the Final Approval stage. For example, the reaction of the class cannot be determined in full until the Settlement Class Members have received the notice and the opportunity to object or opt-out. In addition, the Court cannot fully address the effectiveness of notice until after it has gone out; however, Plaintiff is confident that the notice program will be effective, given that it relies on Defendants' records. In addition, Plaintiff expects that the method of processing claims will be efficient. No Settlement Class Member has to affirmatively submit a claim form—those entitled to a payment will receive it, unless they opt-out. With respect to attorneys' fees, Plaintiff expects the Court will set a briefing schedule for approval of Plaintiff's fee request, however, the Court may take note that Defendants have agreed to pay fees separate from the Settlement Fund, so as not to reduce the fund. Finally, there are no separate agreements in this case, other than a preliminary term sheet, which has been

attached as an exhibit hereto. Accordingly, the Court should find that the remainder of the 23(e)(2) and *Scovil* factors weigh in favor of preliminary approval.

### C.     The Settlement Is Also Reasonable Under the FLSA

In the FLSA context, "for an employee's waiver of his rights to unpaid wages and liquidated damages to be binding, either the U.S. Secretary of Labor must supervise the settlement or a court must approve it. *Prescott*, 2011 WL 6662288, at *1. In order to approve a FLSA settlement, the Court must determine that it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Curtis v. Scholarship Storage Inc.*, 2016 WL 3072247, at *3. In addition, at least one named plaintiff must be willing to sign the agreement. *See Michaud v. Monroe Muffler Brake, Inc.*, No. 2:!2-cv-00353-NT, 2015 WL 1206490, at *9 (D. Me. Mar. 17, 2017). "The factors supporting approval of a Rule 23 settlement of state wage and hour claims may also support approval of collective action settlement of FLSA claims." *Id.* Here, the Court should approve the FLSA settlement for all of the same reasons discussed above. Furthermore, the FLSA settlement only covers the FLSA Plaintiffs, all of whom have affirmatively joined an Action and will each sign the Settlement Agreement for their respective FLSA case should they not withdraw and exclude themselves from the Settlement.

## V.     PLAINTIFF'S PROPOSED CLASS NOTICE PROGRAM MEETS THE REQUIREMENTS OF RULE 23(e)

Under Rule 23(e), the Court "must direct notice in a reasonable manner to all Class Members who would be bound by a proposed settlement." Fed. R. Civ. P. 23(e)(1). The notice provided to members of a class certified under Ruler 23(b)(3) must be the "best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Ruler 23(c)(2) enumerates mandatory components of any initial class notice for a Rule 23(b)(3) class:

> 1.     The nature of the action
> 2.     The definition of the class certified;

3.      The class claims, issues or defenses;

4.      That a Class Member may enter an appearance through an attorney if the member so desires;

5.      That the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and

6.      That a class judgment will include all members who do not request exclusion.

Due process also requires a mailed settlement notice to contain a description of Settlement Class Members' rights in the litigation and notice that Settlement Class Members have an opportunity to be heard and to participate in the litigation, whether in-person or through counsel, and an opportunity to present objections to the settlement. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). The Parties' proposed Settlement Notices meet each of the requirements in Rule 23(c)(2) as well as these additional due process requirements.

The Parties have drafted proposed Settlement Notices and a notice plan that satisfy the requirements of Rule 23(e) and due process. The proposed Settlement Notices, submitted as Exhibits 1A, 1B, 2A, and 2B to the Settlement Agreement, explain the nature of the action and the terms of the Settlement including: (1) the total settlement amount; (2) the attorney's fees to be requested; (3) how Settlement Class Members' settlement payments will be calculated; (4) the estimated amount of each Settlement Class Members' settlement share and the procedure for challenging the calculation; (4) the claims that will be released; and (5) how the Settlement Class Member may collect his portion of the Settlement, exclude himself from the Settlement, or object to the Settlement.

Prior to mailing the Settlement Notices, the Settlement Administrator will update Settlement Class Members' addresses supplied by Defendants with both the National Change of Address (NCOA) database and by skip-tracing each address. The Claims Administrator will make further appropriate efforts to locate more current address information for any returned Class Notice

and will re-mail those for which an updated address has been found. This is the best notice practicable. The Court should find that the notice plan more than satisfies the requirements of Rule 23(e) and should therefore approve it.

## VI.     CAFA NOTICE OF THE SETTLEMENT IS REQUIRED

CAFA requires that notice be served on "the appropriate Federal official" and "appropriate State official" within "[n]ot later than 10 days after a proposed settlement of a class action is filed in court." 28 U.S.C. § 1715(b). The Settlement Agreement provides for CAFA notice to be given, sent by the Settlement Administrator after preliminary approval is filed in the form required by the statute.

## VII.    THE COURT SHOULD SET A FINAL APPROVAL HEARING

Pursuant to Rule 23(e), following notice, courts conduct a fairness hearing where all interested parties have an opportunity to be heard. Following this hearing, the Court will determine the fairness and adequacy of the Settlement. The Parties request the Court to set a fairness hearing approximately 30 days after the close of the notice period during which the Court can consider, among other things, whether to grant final approval of the terms of the Settlement Agreement, whether to grant Class Counsel's request for attorney's fees and costs and for service payments to Plaintiffs, as well as any objections to the settlement, Class Counsel's fee request, or the service payments. The Court should also set the deadlines for Settlement Class Members to exclude themselves from the settlement and for objectors to file any objections with the Court in advance of the fairness hearing.

Class Counsel will file their fee petition no less than fourteen days before the close of the notice period.

## VIII.   CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court: (1) grant preliminary approval of the proposed Settlement; (2) approve Atticus Administration as the Settlement Administrator; (3) approve the form, content, and method of distribution of the Settlement Notice and order Notices to be issued; (4) direct that CAFA notice be issued to appropriate state and federal officials; (5) set a briefing schedule for: the joint motion for final approval, Class Counsel's motion for attorneys' fees, and Named Plaintiff's motion for a Service Award; and (6) schedule a fairness hearing to consider final approval of the proposed settlement.

*        *        *

Dated: October 21, 2021
 Respectfully submitted,

s/ Shawn J. Wanta

Amy P. Dieterich
SKELTON, TAINTOR & ABBOTT
95 Main Street
Auburn, Maine 04210
Telephone: (207) 784-3200
Fax: (207) 784-3345
adieterich@sta-law.com

Shawn J. Wanta, *pro hac vice*
Christopher D. Jozwiak, *pro hac vice*
Scott A. Moriarity, *pro hac vice*
BAILLON THOME JOZWIAK & WANTA LLP
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone: (612) 252-3570
Fax: (612) 252-3571
samoriarity@baillonthome.com
sjwanta@baillonthome.com
cdjozwiak@baillonthome.com

Respectfully submitted,

 /s/ Frederick B. Finberg

Flowers Foods, Inc., Lepage Bakeries Park Street, LLC and CK Sales Co., LLC,

By their attorneys,
 Peter Bennett,
Esquire
Frederick B. Finberg,
Esquire Joanne I.
Simonelli,
Esquire The Bennett Law
Firm, P.A. 75 Market
Street, Suite 201
Portland, ME 04101
(207) 773-4775

Kevin P. Hishta, Esquire
C. Garner Sanford, Jr., Esquire
A. Craig Cleland, Esquire

J. Gordon Rudd, Jr., *pro hac vice*
David M. Cialkowski, *pro hac vice*
ZIMMERMAN REED LLP
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Fax: (612) 341-0844
Gordon.Rudd@zimmreed.com
David.Cialkowski@Zimmreed.com

Ogletree, Deakins, Nash, Smoak &
Stewart 191 Peachtree St., NE, Suite
4800
Atlanta, GA 30303
(404) 881-1300

Margaret S. Hanrahan, Esquire
Ogletree, Deakins, Nash, Smoak &
Stewart 201 South College Street, Suite
2300
Charlotte, NC 28244
(704) 342-2588

*Attorneys for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 21, 2021 I filed the foregoing via the Court's CM/ECF system. The CM/ECF system will provide service of such filing(s) via Notice of Electronic Filing (NEF) to counsel of record.

s/ Shawn J. Wanta
Shawn J. Wanta
