# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| TIMOTHY NOLL, individually and on behalf of similarly situated individuals, | Civil No. 1:15-cv-00493-LEW |
| Plaintiff, | **JOINT MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT WITH INCORPORATED MEMORANDUM OF LAW** |
| v. | |
| FLOWERS FOODS, INC., LEPAGE BAKERIES PARK STREET, LLC, and CK SALES CO., LLC, | |
| Defendants. | |

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND .............................................................................. 2

III.    PROCEDURAL BACKGROUND....................................................................... 4

        A.      Litigation History................................................................................... 4

        B.      Settlement Negotiations ......................................................................... 6

        C.      Settlement Agreement............................................................................ 7

                1.      Settlement Payments to all Class Members ............................... 8

                2.      Route Buybacks and Offers of Employment for Current
                        Distributors ................................................................................ 9

IV.     NOTICE PLAN .................................................................................................. 10

V.      FINAL APPROVAL........................................................................................... 11

        A.      Because Class Counsel and Plaintiff Vigorously Advocated for the
                Class, Class Counsel and Plaintiff Adequately Represented the
                Class under Rule 23(e)(2)(A), and Counsel Has Demonstrated
                Their Quality under the Fourth *Scovil* Factor. ...................................... 13

        B.      The Late Stage of the Litigation and the Completion of Discovery,
                Expert Discovery, and Summary Judgment Support Approval of
                the Settlement under the Second *Scovil* Factor...................................... 13

        C.      Because the Settlement Was Vigorously Negotiated over Two
                Years at Arms' Length, Rule 23(e)(2)(B) and the Fifth *Scovil*
                Factor Are Satisfied. ............................................................................. 14

        D.      The Relief Provided for the Class Is Substantial, Satisfying Rule
                23(e)(2)(C) and the First and Sixth *Scovil* Factors .............................. 15

        E.      The Settlements Treats Class Members Fairly, Satisfying Rule
                23(e)(2)(D)............................................................................................. 18

        F.      The Reaction of the Class Was Overwhelmingly Positive,
                Satisfying the Third *Scovil* Factor........................................................ 19

VI.     RESPONSE TO OBJECTION BY JOHN LANDRY ...................................... 20

VII.    THE SETTLEMENT REFLECTS A REASONABLE COMPROMISE
        OF A BONA FIDE DISPUTE UNDER THE FLSA........................................ 21

VIII.   CONCLUSION..........................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Curtis v. Scholarship Storage Inc.*,
No. 2:14-cv-303, 2016 WL 3072247 (D. Me. May 31, 2016)...........................................14, 22

*Durrett v. Housing Auth.*,
896 F.2d 600 (1st Cir. 1990)................................................................................................16

*In re Pharm. Indus. Avg. Wholesale Price Litig.*,
588 F.3d 24 (1st Cir. 2009)...................................................................................11, 12, 16

*Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982) ..........................................................................................21

*O'Connor v. Dairy*,
No. 2:14-00192, 2018 WL 3041388 (D. Me. June 19, 2018).....................................15, 16, 17

*Scovil v. FedEx Ground Package System, Inc.*,
No. 1:10-cv-515, 2014 WL 1057079 (D. Me. Mar. 14, 2014) ...................................... passim

*Venegas v. Global Aircraft Serv., Inc.*,
No. 2:14-cv-249, 2017 WL 2730025 (D. Me. June 26, 2017)..............................14, 15, 16, 17

RULES

Fed. R. Civ. P. 23 ............................................................................................................. passim

STATUTES

28 U.S.C. § 1715(b) ...............................................................................................................11

28 U.S.C. § 2201.....................................................................................................................4

29 U.S.C. § 201 ............................................................................................................. passim

29 U.S.C. § 216(b) ...............................................................................................................2, 4

14 Me. Rev. Stat. § 591.............................................................................................................4

26 Me. Rev. Stat. § 591-A .........................................................................................................4

26 Me. Rev. Stat. § 621..............................................................................................................4

26 Me. Rev. Stat. § 661..............................................................................................................4

26 Me. Rev. Stat. § 1043(11)(E)..................................................................................................4

## I.    INTRODUCTION

Pursuant to Rule 23(e), Plaintiff Timothy Noll moves for final approval of the Class Action Settlement with Defendants Flowers Foods, Inc., Lepage Bakeries Park Street LLC, and CK Sales Co., LLC (collectively, "Lepage" or "Defendants").  The parties have engaged in hard-fought complex litigation for more than six years.  After completing substantial factual and expert discovery, the parties briefed and argued two rounds of summary judgment motions, in which the Court both narrowed the number of viable legal theories and clarified the scope of recoverable wage deductions and the applicability of treble damages.  In addition, the decertification of the collective action in the *Noll* matter spawned two more cases by approximately two-thirds of the former members of the FLSA Collective Action who reasserted their individual FLSA overtime claims against Lepage in the *Bowen* and *Aucoin* actions.  On the very eve of trial in the *Noll* matter, and only after participating in multiple mediation sessions over the course of two years, were the parties able to resolve the claims in the *Noll* action as well as the *Bowen* and *Aucoin* actions.

The Settlement provides substantial monetary relief to the 119 Rule 23 Class Members, many of whom are also FLSA Plaintiffs (collectively "Class Members" "the Class" or "Plaintiffs"), including $9 million in direct payments to the Class.  The Settlement also provides unprecedented injunctive relief, which Defendants have never before agreed to in a class action settlement, in the form of Lepage's agreement to repurchase the Distribution rights of Distributors and hire Distributors as employees in the position of Route Sales Representatives, entitling them to the benefits of employment.  The repurchase of rights adds another approximately $6.6 million to the value of the Settlement.  Current Distributor Class Members who work for Lepage in Maine as Route Sales Representatives also will be entitled to valuable employment benefits (health benefits, retirement benefits, etc.), in addition to the intangible benefits of employment incapable of being quantified.  In addition, Defendants have agreed to pay Class Counsel's attorney's fees

and costs in the amount of $7.5 million, subject to the Court's approval, in addition to the direct payments to the class, the cost of the buybacks, and the benefits of employment.  Finally, Defendants are paying the costs of notice and settlement administration separately.  In all, the Settlement totals over $23 million.

Given this multi-faceted relief package, this Settlement fully complies with the requirements for court approval under Rule 23(e)(2) and the *Scovil* factors and 29 U.S.C. § 216(b). In accordance with this Court's November 30, 2021 Order, the Class was notified of the Settlement.  Of the 119 Class Members, none opted out of the Settlement, and only one submitted an objection, based in part on a misunderstanding of the Settlement terms.  Class Members are fairly and adequately compensated through substantial monetary and non-monetary relief.  The Settlement provides a reasonable alternative to the burdens and risks of continued litigation and probable appeals.  The Parties, through their experienced counsel, carefully assessed the strengths and weaknesses of their respective positions and negotiated terms that reflect that assessment. Class Counsel fully endorses the Settlement and asks this Court to grant final approval.

## II.   FACTUAL BACKGROUND

Defendant Flowers Foods is headquartered in Georgia and holds numerous wholly-owned subsidiaries, including Defendants Lepage Bakeries Park Street, LLC (Lepage) and CK Sales Co., LLC (CK Sales) that bake and produce various baked goods, including packaged breads, rolls, and cakes.  Since late 2013, Lepage contracts with independent Distributors, including Maine Distributors, like the Plaintiff.  *See* Doc. 191 at 9.  These Distributors purchase distribution rights to sell and distribute products to customers in defined territories.  Distributors enter into Distributor Agreements with Lepage whereby they are classified as independent contractors.  *See* Doc. 262 at

4.   Plaintiffs allege that Defendants misclassified Distributors, who should be classified and compensated as, and receive the benefits of, employees.  *See generally* Doc. 1.

Plaintiffs alleged in this lawsuit that Distributors' job responsibilities and the reality of their relationship with Defendants supports a finding that they are employees under the Fair Labor Standards Act and Maine Wage Payment Laws.  *See id.*  Plaintiffs allege, for instance, that they are required to arrive at Defendants' warehouses early in the morning to stock their delivery vehicles with Defendants' products, and deliver those products to customers at the times and places specified by Defendants.  *See* Doc. 191 at 12-13, 15-16.  Plaintiffs further allege that Distributors have no significant sales opportunities or influence over their day-to-day activities, in matters relating to pricing, merchandising, or product selection.  *Id.* at 18-20.

Defendants deny these allegations.  They assert that Distributors control the means, method, and manner of their work; that Distributors have an ownership interest in the distributorships and entrepreneurial opportunities to increase profits and equity; and that Distributors have discretion to determine pricing, merchandising, product selection and service times, within the bounds of their relationships with retailers.  *See generally* Doc. 194 at 4-19.

Due to their classification as independent contractors, Distributors bear business-related expenses, such as administrative fees, warehouse fees, territory payments, truck payments or lease payments, and insurance payments.  *See* Doc. 307 at 2.  Also due to their classification as independent contractors, Distributors were not paid overtime for more than 40 hours' work in a workweek.  *See* Doc. 191 at 2.  Plaintiffs accordingly sought to recover overtime wages under the FLSA and Maine law, as well as reimbursement of deductions under Maine law.  *See* Doc. 1 at ¶¶ 58-82.  Defendants have denied Plaintiffs' allegations, denied violating the law, and denied that Plaintiffs or Class Members are entitled to damages or other relief.

III.    **PROCEDURAL BACKGROUND**

A.    **Litigation History**

Plaintiff Timothy Noll filed this action on December 3, 2015, against Defendants on behalf of himself and a class of current and former Distributors, alleging violations of the FLSA, 29 U.S.C. § 201, *et seq.*; the Maine Independent Contractor Law, 26 Me. Rev. Stat. §§ 1043(11)(E) and 591-A; Maine Employment Practices Laws, 26 Me. Rev. Stat. §§ 621 *et seq.* and 661 *et seq.*; and Maine Common Law, and sought Declaratory Judgment pursuant to 28 U.S.C. § 2201 and 14 Me. Rev. Stat. §§ 591 *et seq.   See* Doc. 1.   Each claim was premised on the allegation that Defendants improperly classified Maine Distributors as independent contractors rather than employees, and sought damages in the form of unpaid overtime for hours worked over forty in a week under the FLSA as well as unlawful deductions and unpaid overtime under Maine law.

On January 20, 2017, this Court granted Plaintiff's motion for conditional certification of the federal overtime claims pursuant to § 216(b) of the FLSA.   Doc. 81.   The FLSA Collective Class was defined as "All persons who are or have performed work as Distributors for Flowers Foods, Inc., LePage Bakeries Park Street LLC, and/or CK Sales Co., LLC in the state of Maine under a Distributor Agreement or a similar written contract that they entered into during the period commencing three years prior to the date of the filing of the Complaint in this case or December 3, 2012 and continuing through the close of the Court-determined opt-in period." *Id.* at 4.

Following conditional certification, the parties engaged in extensive discovery, which involved multiple document productions totaling hundreds of thousands of pages, which Class Counsel used a team of attorneys to review.   Class Counsel also responded to interrogatories and requests for production for Plaintiff Noll and 55 opt-in Plaintiffs, and defended more than a dozen opt-in Plaintiff depositions.   Class Counsel deposed numerous corporate executives from the local bakery and the national organization, including lengthy 30(b)(6) depositions of both Flowers

Foods and Lepage Bakeries, spanning dozens of topics and inquiring into Flowers' extensive nationwide operations.  The parties also exchanged expert reports, which they supplemented multiple times, and deposed the other side's expert witnesses.  Due to problems with Defendants' databases, Plaintiffs' experts had to repeatedly revise their calculations to accurately determine Class Members' damages.

When discovery was complete, Plaintiffs moved for class certification of the Maine Wage Payment Law claims under Rule 23, and Defendants moved to decertify the FLSA collective action. Docs. 190, 191. This Court granted class certification and denied decertification in an order on January 15, 2019. Doc. 202. Defendants petitioned the First Circuit for interlocutory review of the class certification decision on January 29, 2019.  Plaintiffs opposed the petition and the First Circuit denied interlocutory review on April 3, 2019.  *See Noll v. Flowers Foods, Inc.*, No. 19-8001 (1st Cir.).

The parties filed cross-motions for summary judgment on May 31, 2019. Docs. 224, 230. The parties argued the motions in December 2019. By order on January 29, 2020, this Court denied Plaintiffs' motion for summary judgment and granted Defendant's motion for summary judgment in part. Doc. 262.  The order dismissed Class Members' overtime claims under Maine law.  The order also held the FLSA claims subject to the Motor Carrier Act exemption as modified by the Technical Corrections Act.  Finding individualized issues as to whether FLSA opt-in Plaintiffs fell under the TCA, this Court also invited Defendants to file a renewed motion for decertification. After briefing, this Court decertified the FLSA collective action with an order on August 3, 2020. Doc. 277.

In order to preserve the overtime claims following the decertification order, Class Counsel reached out to each of the FLSA collective members, entered individual representation agreements

with them, and collected information necessary to file their individual claims in two lawsuits. Approximately two-thirds of the opt-in FLSA Plaintiffs proceeded with individual FLSA overtime claims, litigated through two separate cases filed on November 3, 2020. *See Aucoin v. Flowers Foods, Inc.*, No. 20-410 (D. Me.); *Bowen v. Flowers Foods, Inc.*, No. 20-411 (D. Me.). The parties exchanged supplemental discovery in the cases and started working on anticipated summary judgment motions.

The parties also continued litigating the original case, now comprising Class Members' illegal wage deduction claim under Maine wage laws. Defendants filed another summary judgment motion on October 30, 2020, arguing that Class Members could not recover triple damages or other specified categories of damages, even if Plaintiffs prevailed on the underlying misclassification claim. Doc. 294. Plaintiffs opposed that motion and in an order on March 9, 2021, this Court clarified the availability of treble damages, holding that significant categories of damages—specifically deductions for territory fees and truck fees—could be tripled. Doc. 307.

B.     <u>Settlement Negotiations</u>

The parties first attempted to resolve this case in May 2019 with the assistance of Michael Dickstein of Dickstein Dispute Resolution.   The mediation involved the threshold issue of employment classification of Distributors as well as claims for overtime and unauthorized deductions under the FLSA and applicable state laws.   In advance of formal in-person mediation proceedings on May 5 and 6, 2019, Class Counsel prepared a comprehensive mediation statement that specifically responded to all the legal issues and defenses raised by Defendants. Class Counsel also needed to review newly produced data from Defendants and worked with Plaintiffs' expert to update damages calculations. Though the May 2019 mediation was unsuccessful, the parties continued discussions, including a second round of in-person mediation on June 13 and 14, 2019,

and a third round on December 9, 2019. Notwithstanding these ongoing discussions, no settlement was reached.

Following the second summary judgment ruling, the parties returned to mediation. Only after years of hard-fought litigation did Flowers even entertain the injunctive relief which significantly benefits the current Class Members. The parties engaged in multiple mediation sessions via Zoom in April, May, and June 2021, again facilitated by Mr. Dickstein. The parties had a final mediation before Mr. Dickstein in late July 2021 but did not finalize the terms of a class action settlement until October 2021 given the complexity of the nonmonetary relief. The Settlement Class covers all individuals who operated under a Distributor Agreement with Defendants Lepage Bakeries or CK Sales from December 2, 2012, and it encompasses both Class Members with claims under Maine wage laws and FLSA Plaintiffs with claims in the *Bowen* and *Aucoin* matters.

On October 21, 2021, the Parties filed a Joint Motion for Preliminary Approval of the settlement, which was granted on November 30, 2021. Doc. 319.

### C.    <u>Settlement Agreement</u>

The Settlement Agreement provides substantial monetary and non-monetary relief to Plaintiff Noll, the Rule 23 Class Members, and the FLSA Plaintiffs.  Specifically, the following persons are eligible to participate in the settlement: any individual who, either individually or on behalf of a corporation or business entity: (1) operated under a Distributor Agreement with CK

Sales/Lepage during the Covered Period in the State of Maine;[1] and/or (2) is a *Bowen* or *Aucoin*

Plaintiff (also referred to as "FLSA Plaintiffs");[2] or (3) is Named Plaintiff Timothy Noll.

      1.    <u>Settlement Payments to all Class Members</u>

The Settlement Agreement provides significant monetary relief to participating Settlement

Class Members.  Defendants have agreed to create a non-reversionary settlement fund of up to $9

million, which provides (1) payments to Settlement Class Members; and (2) a Service Award to

Named Plaintiff Noll in the amount of $10,000.  Class Counsel estimates that Class Members'

mean recovery will be approximately $75,500 and a median recovery of $56,600.  The percentile-

distribution recovery is as follows:

| Percentile | Median Recovery |
|:---:|:---:|
| **90%** | $181,264.32 |
| **75%** | $106,003.98 |
| **50%** | $59,309.08 |
| **25%** | $23,978.10 |
| **10%** | $8,308.12 |

Importantly, no Class Member will be required to submit an additional claim form to

receive a share of the Settlement Fund.  The payments will be automatic.

---

[1] The Covered Period is defined generally in the Settlement Agreement as December 2, 2012, through the date of preliminary approval, however, the Period will be calculated on an individual basis for each Settlement Class Member, using the dates each individual was a Distributor and any other relevant information.

[2] The FLSA Plaintiffs are: Michael Bowen, Michael A. Campbell, Jeffrey Clark, Clifford Cyr, Michael Deschenes, Ernest Dore, Jeffrey Gagne, David Googins, Thomas Herrin, Paul Roy, James Snow, Stephen M. Temm, Richard Veilleux, Nicholas Aucoin, Michael Barlow, Normand Belanger, Jason Britton, Allen Burns, Peter Carr, Daniel Cofone, Denis Crepeau, Richard Curran, Edward Henningsen, Jr., Paul Masse, Michael Mendes, Jeffrey Smith, Roger Swedberg, and Gary White.

The Settlement Fund shall be allocated as follows:

Step 1: For Class Members or FLSA Plaintiffs who had more than one territory at some point during the class period, select the territory with the highest gross sales and discard sales (but not deductions) data from the smaller territory(ies).

Step 2: Calculate FLSA overtime shares by multiplying the number of weeks each FLSA Plaintiff worked during the two-year statute of limitations period by 55 hours, then divide that FLSA Plaintiff's gross sales by that product. If the quotient is less than $1,000, round up to $1,000.

Step 3: Calculate each Class Member's state wage deduction damages by adding the dollar amount of the Class Member's warehouse fee, territory payment, administrative fee, shrink, and stale payments during the applicable statute of limitations.

Step 4: Reduce the common fund by the sum of all FLSA damages calculated in steps 1 through 4.

Step 5: Apportion the remaining money on a pro rata basis for each Class Member for wage deduction damages.

Step 6: Verify results. The sum of all Class Member and FLSA Plaintiff payments must equal $9,000,000.

FLSA Plaintiffs who operate multiple territories shall collect monies allocated to alleged overtime on only one territory.

2.    <u>Route Buybacks and Offers of Employment for Current Distributors</u>

In addition to the settlement payments for all Class Members, the Parties have agreed to additional injunctive relief as part of the settlement pursuant to Rule 23(b)(2), which will apply to all current Distributors in Maine whether they exclude themselves from the Settlement or not, and will provide significant additional monetary and non-monetary benefits for these individuals. Specifically, the Parties have agreed that within six months of the Final Approval of the Settlement, Defendants will terminate all Distributor Agreements with Maine Distributors, and repurchase the distribution rights covered by such Distributor Agreements for the sum of ten (10) times the average weekly branded sales calculated over a 52-week period preceding the date of repurchase

9

and will pay this sum net of the balance of any outstanding territory notes issued by FLOFIN.[3] The cost of repurchasing the distribution rights in Maine is approximately $6.6 million, which is a direct monetary benefit to current Distributors.

All current Distributors will then have the opportunity to work for Lepage as employees in the position of Route Sales Representatives, provided they otherwise qualify for employment and are interested.  These individuals will be eligible for employment benefits consistent with the benefits Lepage provides employees (health benefits, retirement benefits, etc.), and the rights and protections of employment status under state law.

The Parties will develop an extended schedule for termination of the Distributor Agreements in the event a certain number of current Distributors indicate they are not interested in working for Lepage.

## IV.    NOTICE PLAN

Rule 23(c)(2)(B) provides that in the event of a class action settlement, the court must direct "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  The rule further requires that the notice states, in plain and concise language, the nature of the action, the class definition, the class claims and defenses, class members' right to appear, object, or opt out, and the binding impact of the settlement and release.

On November 30, 2021, the Court granted preliminary approval of the Settlement, approved the Parties' notice plan, and appointed Atticus Administration as the Settlement Administrator.  *See* Doc. 319 at 2.

---

[3] If the Distributor's territory value is less than an outstanding FLOFIN note, Lepage will not seek repayment of this deficit.

On or about December 14, 2021, Atticus sent Court-approved notices directly to 118 designated Class Members. (Atticus Decl. ¶ 6). After the notices were mailed, twelve were returned as undeliverable and one was sent back with a forwarding address. (Atticus Decl. ¶ 7). After skip tracing, all thirteen were successfully re-sent to the correct addresses. (*Id.*). In addition, reminders went out to the Class Members on January 13, 2022, who had not submitted an Employment Showing of Interest form. (Atticus Decl. ¶ 8).

As of the filing of this memorandum, no Class Member has asked to opt-out of the Settlement and only one has objected, which will be discussed further below. (Atticus Decl. ¶ 9). Only six Class Members have indicated that they do not want to stay on as employees, and will take their settlement payments and buy-out and leave Lepage. (Atticus Decl. ¶¶ 10-11).

The notice plan provided for the best practicable notice under the circumstances and it was reasonably calculated to reach substantially all Class members. The notice also provided a clear, concise, and plain summary of the Class claims, the defenses, and Class Members' rights. As a result, the notice plan complied with Rule 23(c)(2)(B) and 23(e)(1)(B). And in accordance with the Class Action Fairness Act, Atticus also provided due notice to state and federal officials. 28 U.S.C. § 1715(b). (Atticus Decl. ¶ 4). This Court has ample reason to find that Class Members received adequate notice under the notice plan and may accordingly proceed to final approval.

## V.    FINAL APPROVAL

In accordance with Rule 23(e)(2), the Court may approve a settlement that is fair, reasonable and adequate. In general, a district court should presume the settlement is reasonable if the parties negotiated at arm's length and conducted sufficient discovery. *See In re Pharm. Indus. Avg. Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009). A district court enjoys

considerable discretion in approving a class settlement, given the generality of the standard and the need to balance a settlement's benefits and costs. *Id.* at 33.

In terms of the factors that courts use to evaluate a settlement, in 2018, Rule 23(e)(2) was substantially expanded to prescribe specific factors for evaluation of whether a class action settlement is fair and reasonable. The purpose of the amendment was to supplant the "sheer number of factors" that had developed under the case law and return the focus to "a shorter list of core concerns." *See* Fed. R. Civ. P. 23, Advisory Committee Note (2018). The factors are: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (3) the terms of any proposed award of attorney's fees, including timing of payment; and (4) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

In the District of Maine, however, many courts still analyze the factors from the case *Scovil v. FedEx Ground Package System, Inc.*, No. 1:10-cv-515, 2014 WL 1057079 (D. Me. Mar. 14, 2014). These factors are: (1) the comparison of the proposed settlement with the likely result of litigation; (2) stage of the litigation and the amount of discovery completed; (3) reaction of the class to the settlement; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration. While some of these factors overlap with those prescribed by Rule 23, others are slightly different. All factors will be discussed below, but whether analyzed under Rule 23 or the *Scovil* factors, the Settlement unquestionably meets the standards of fairness and reasonableness sufficient for final approval.

**A.**     **Because Class Counsel and Plaintiff Vigorously Advocated for the Class, Class Counsel and Plaintiff Adequately Represented the Class under Rule 23(e)(2)(A), and Counsel Has Demonstrated Their Quality under the Fourth *Scovil* Factor.**

Adequacy of representation under Rule 23(e)(2)(A) largely overlaps with the adequacy requirement under Rule 23(a)(4).  In its January 15, 2019 Class Certification order, the Court found that Class Counsel and Plaintiff are adequate representatives of the Class and there were no conflicts of interest that undermined adequacy.  The Court also found that Class Counsel are "qualified, experienced, and able to pursue the interest of the class in this litigation."  Doc. 202 at 4-5.  That finding is determinative of this factor now.

Since the Class Certification Order, Class Counsel has continued to demonstrate its adequacy through vigorous prosecution of this case, which included voluminous discovery and depositions; complex motion practice including class certification proceedings and a petition for interlocutory appeal, as well as two rounds of summary judgment briefing; and expert analysis to calculate Class Members' damages.  These efforts on behalf of the Class also demonstrates Class Counsel's quality of work and representation.  *See Scovil*, 2014 WL 1057079, at *4.  Plaintiff Noll likewise demonstrated his adequacy by fully participating in the case, providing his knowledge and understanding of the facts, assisting with the investigation, and responding to discovery.  Accordingly, these factors support approval of the Settlement.

**B.**     **The Late Stage of the Litigation and the Completion of Discovery, Expert Discovery, and Summary Judgment Support Approval of the Settlement under the Second *Scovil* Factor.**

Although not an express 23(e) factor, the second *Scovil* factor asks the Court to consider the stage of the litigation and amount of discovery completed.  As the Court knows, the Parties have been ardently litigating this case for now more than six years, and have engaged in extensive discovery and motion practice.  Indeed, the case was settled on the very eve of trial.  *Compare*

*Curtis v. Scholarship Storage Inc.*, No. 2:14-cv-303, 2016 WL 3072247, at *2 (D. Me. May 31, 2016) (finding sixteen months of discovery sufficient); *Venegas v. Global Aircraft Serv., Inc.*, No. 2:14-cv-249, 2017 WL 2730025, at *2 (D. Me. June 26, 2017) (noting settlement only occurred after two years of litigation and a decision on summary judgment).  Throughout this litigation, Class Counsel conducted substantial discovery, including reviewing and analyzing hundreds of thousands of pages of documents and taking all the necessary depositions to establish the facts for trial regarding Defendants' business model, the bakery delivery business, and the nature of Distributors' work.  This included taking individual depositions of corporate witnesses, both from Flowers Foods and Lepage Bakeries, as well as an extensive 30(b)(6) deposition of each Defendant with numerous corporate designees.  Additionally, in order to increase efficiency, the parties stipulated to include the testimony of certain corporate witnesses from other related cases.  Through discovery and motion practice, including two rounds of summary judgment briefing, Class Counsel was able to fully analyze the merits of Plaintiffs' claims, the strength of Defendants' defenses, and the risks they faced in proving liability and damages.  In addition, as noted above, Class Counsel's depth of knowledge regarding this case specifically and Flowers' business model generally, having litigated these cases across the Country, demonstrate that Counsel has an informed basis upon which to make the determination that this Settlement is in the best interests of class members.  *Compare Scovil*, 2014 WL 1057079, at *4 (noting Plaintiffs' Counsel's representation of classes in nearly identical suits).  Therefore, this Court should find that the second *Scovil* factor supports final approval of this Settlement.

        C.      **<u>Because the Settlement Was Vigorously Negotiated over Two Years at Arms' Length, Rule 23(e)(2)(B) and the Fifth *Scovil* Factor Are Satisfied.</u>**

Rule 23(e)(2)(B) examines whether the settlement was negotiated at arms' length, and the fifth *Scovil* factor similarly asks the court to consider the circumstances surrounding the

Settlement. It is unquestionably the case that these factors are satisfied. As discussed above, it took almost two years of repeated mediation sessions for the Parties to reach a comprehensive agreement in this case, and only did so after the Court clarified and narrowed the scope of this case through its rulings on two separate sets of summary judgment motions. *See Venegas*, 2017 WL 2730025, at *2 (noting settlement only occurred after two years of litigation and a decision on summary judgment). In total, the Parties engaged in seven separate, some multi-day mediation sessions with an experienced mediator and continued negotiations throughout this time period through countless emails and calls between Counsel and the mediator. *See id.* (noting settlement reached after 10 hours of negotiation); *O'Connor v. Dairy*, No. 2:14-00192, 2018 WL 3041388 (D. Me. June 19, 2018) (noting the Parties had an initial mediation, followed two years later by a settlement conference, and that terms were agreed upon about a month later); *Scovil*, 2014 WL 1057079, at *4 (noting Counsel mediated and then continued to discuss settlement for a period of almost two weeks). Furthermore, this case was the last of Class Counsel's cases against Flowers Foods and its subsidiaries to be settled, because of substantial disagreements between the Parties regarding monetary damages and non-monetary relief. Given this history, as well as the significant relief obtained through the Settlement, the Court should have no concern here regarding collusion.

**D.**     **The Relief Provided for the Class Is Substantial, Satisfying Rule 23(e)(2)(C) and the First and Sixth *Scovil* Factors**

Rule 23(e)(2)(C)(i) examines the costs, risks, and delay of trial and appeal. This subfactor aligns with the sixth *Scovil* Factor, which assesses the prospects of the case, including risk, complexity, expense and duration, as well as the first *Scovil* factor, which asks the Court to compare the relief obtained in the Settlement with the likely trial outcome, but which should be

discounted based on risk, delay and expense. *See Scovil*, 2014 WL 1057079, at **2, 5; *see also O'Connor,* 2018 WL 3041388, at *2; *Venegas*, 2017 WL 2730025, at *2.

There is a policy in the First Circuit of encouraging class action settlements. *Durrett v. Housing Auth.*, 896 F.2d 600, 604 (1st Cir. 1990). Achieving settlement in such cases is not easy; district judges must realistically evaluate settlements based on the circumstances of the case. *See In re Pharm.*, 588 F.3d at 36. Here, the amount of monetary recovery, combined with the significance of the injunctive relief, which will provide Class Members with concrete, ongoing relief in the form of employee benefits, strongly supports preliminary approval of the Settlement, particularly when compared to the costs, risks, and delay associated with continuing to litigate not only this case, but the *Bowen* and *Aucoin* cases as well, which were filed as a result of the Court's Order in this case decertifying the collective action.

Plaintiffs filed this case asserting claims for overtime and unlawful deductions. Plaintiffs believe they obtained substantial evidence proving that Distributors were misclassified as independent contractors under Maine law, and thus believe they would still prevail on the threshold question of employment status. Defendants, of course, deny that Plaintiffs would prevail on this question and continue to assert a vigorous defense. This issue would have to be resolved at trial, and there is a risk that Plaintiffs would not prevail on this question.

Plaintiffs also believe that the Class has strong claims for recovering unpaid overtime and illegally withheld deductions. At present, however, only the unlawful deductions claims remain in the *Noll* case. The state law overtime claims were dismissed and the FLSA Collective action was decertified. Approximately two-thirds of the FLSA plaintiffs filed their individual FLSA overtime claims in two new actions, distinguished by Plaintiffs who used their personal vehicles to transport product, and those who did not per this Court's ruling on decertification. While

Plaintiff Noll and FLSA Plaintiffs believe they would ultimately prevail on the merits of their overtime claim under state and federal law, these issues would have to be resolved by the First Circuit.  Accordingly, Plaintiffs acknowledge the risk of losing on the merits of their case, particularly on the overtime claims.  On the other hand, Plaintiffs believe that given the Court's ruling on Plaintiffs' deductions claims, including affirming the applicability of treble damages, these represent the most significant category of damages, and pose the greatest risks for Defendants.

Given all of these factors, both sides face significant risks and costs moving forward to trial and the inevitable appeals in this case and the *Bowen* and *Aucoin* cases.  A final resolution through litigation would likely not be realized for several more years.  Both parties have a strong interest in avoiding the uncertainty and delay of further litigation and resolving this case.

The Settlement in these cases is therefore a fair compromise of the claims involved, considering these risks.  As discussed, the Settlement creates a fund of up to $9 million, which will be allocated based upon the formula set forth above.  While this sum is less than Plaintiffs believe they could recover at trial, particularly on the deductions claims, it represents a significant portion of the alleged damages, and provides a fair discount based on the risks Plaintiffs face on their claims.  *See Scovil*, 2014 WL 1057079, at **2, 5; *see also O'Connor,* 2018 WL 3041388, at *2; *Venegas*, 2017 WL 2730025, at *2.

Additional relief related to Lepage's repurchase of distribution rights comes with a quantifiable, monetary value of approximately $6.6 million in buyback payments on top of the $9 million direct payments. Injunctive relief in the form of employment benefits adds further and significant monetary value that will be realized for Distributors who choose to remain at Lepage as employees.  Finally, Defendants agreed to pay an additional amount for attorney's fees and

costs separate from and on top of the $9 million settlement fund, the $6.6 in buybacks, and the employment benefits for current Distributors who stay on as Route Sales Associates.

The remaining subfactors of 23(e)(2)(C) also support the outcome. Rule 23(e)(2)(C)(ii) considers the effectiveness of the method for distributing relief to the class. Here, the Settlement provides an easy, efficient method of distributing payments to Class Members without further action by them. Because no Class Members have excluded themselves from the Class, each one will receive a check for their fair share of the Settlement fund.

Rule 23(e)(2)(C)(iii) asks the court to consider any proposed award of attorney's fees, including timing and payment. Class Counsel's petition for attorney's fees is being filed simultaneously with this Court. Notably, no objections have been received to the request for attorney's fees, which amount to approximately one-third of the overall value of the settlement fund and are being paid separately by the Defendants, on top of the direct payments to the class, the cost of the buybacks, and the benefits of employment for current Distributors who stay on as Route Sales Associates. The notice expressly contained the dollar amount Class Counsel would seek for fees. This factor thus favors approval.

Finally, Rule 23(e)(2)(C)(iv) requires the Court to consider any agreement required to be identified under Rule 23(e)(3). No such agreements have been entered into, other than a preliminary term sheet, which was attached an exhibit to the Motion for Preliminary Approval. Accordingly, the Court should find that all of the 23(e)(2)(C) factors weigh in favor of approval.

### E.    The Settlements Treats Class Members Fairly, Satisfying Rule 23(e)(2)(D).

The final Rule 23(e) factor requires the Court to consider whether "the proposed settlement treats class members equitably relative to each other." The underlying consideration is whether relief is apportioned between class members in a way that "takes appropriate account of differences among their claims." Fed. R. Civ. P. 23, Advisory Committee Note (2018).

The payment to each Class Member is directly linked and tailored to their claims in this litigation. Each share is calculated individually from the transactional data of each Class Member's distributorship, based on the weeks Class Members worked during the relevant period. Using a common formula, compensation for unpaid overtime is estimated from Class Members' actual compensation in the relevant period. Using another common formula, compensation for unlawful deductions is derived from the actual deductions Defendants recorded in their payments systems. The FLSA Plaintiffs' damages are greater because they chose to pursue their right to overtime pay through the *Aucoin* and *Bowen* cases. Because the Settlement fairly apportions payment between Class Members, based on their claims and objective criteria, it treats Class Members equitably under Rule 23(e)(2)(D).

### F. The Reaction of the Class Was Overwhelmingly Positive, Satisfying the Third *Scovil* Factor.

The remaining factor is the third *Scovil* factor, which asks the Court to evaluate the reaction of the Class. The reaction has been overwhelmingly positive. No class member has opted out of the suit. One class member, out of 119, has filed a (late) objection to the Settlement. The objection, however, is limited in scope and is based on a misunderstanding of the terms of claims at issue in the lawsuit and a term of his Distributor Agreement (not the Settlement Agreement). *See* Section VI, *infra*.

The fact that one class member has objected to the settlement does not diminish its reasonableness or fairness. *See, e.g.*, *Scovil*, 2014 WL 1057079, at *3. Class Members will receive substantial and ongoing benefits due to the Settlement, which were by no means guaranteed with continued litigation. The Court should therefore approve the Settlement.

## VI.    RESPONSE TO OBJECTION BY JOHN LANDRY

Mr. Landry raises two objections to the settlement. The first objection is that payments he made on a loan issued by his private bank are not included in the calculation of wage deduction damages. The reason those payments are not included in his calculation is because they were not deducted from Mr. Landry's weekly settlement payments.[4] Because Lepage did not deduct third party loan payments from Class Member settlement statements, Class Members cannot claim wage deduction damages for making such payments. In accordance with the proposed Settlement, Lepage will pay off the remaining money owed on the loan and pay Mr. Landry the remaining balance of the value of his territory. Notably, Mr. Landry does not object to Lepage's cessation of using Distributors in Maine; in fact, he has informed the company that he intends to sign on as an employee Route Sales Representative if the proposed settlement is finally approved.

The second objection is that Mr. Landry should not have to incur a transfer fee as part of Lepage's buying back the rights conferred by the Distributor Agreement. The territory transfer fee is a part of the Distributor Agreement not the Settlement Agreement. Lepage, pursuant to the Settlement Agreement, is exercising its right under the Distributor Agreement to cease using Distributors to distribute products in the Maine market areas. The cessation of the independent distributor model is rooted in the Distributor Agreement, which also requires a 5% transfer fee when a Distributor sells their territory.

---

[4] Class Counsel has had an in-person meeting with Mr. Landry and his wife, multiple telephone calls, and several written correspondences to explain the nature of the claims, the underlying damages data, and why Class Members cannot claim damages for money that was not deducted from their settlement statements.

## VII.    THE SETTLEMENT REFLECTS A REASONABLE COMPROMISE OF A BONA FIDE DISPUTE UNDER THE FLSA.

As noted above, this Settlement not only resolves the claims of the Rule 23 class certified in the *Noll* action, but also resolves the FLSA claims of all of the Plaintiffs who joined in the *Aucoin* and *Bowen* actions, which were filed after this court decertified the FLSA Collective Action in the *Noll* matter.  All Plaintiffs in *Aucoin* and *Bowen* actions have signed an individual Settlement Agreement and Release with Defendants.  *See, e.g.*, Exhibits 1 and 2 attached to the Declaration of Susan E. Ellingstad, filed herewith.[5]

Claims under the FLSA can only be settled or compromised under the supervision of the U.S. Department of Labor or with court approval.  The court's review is done to ensure that the parties are comprising only a bona fide dispute over the application of the FLSA provisions. *Scovil*, 2014 WL 1057079, at *8 (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)).  Here, the proposed settlement resolves a bona fide dispute over issues actually in dispute – namely, whether Plaintiffs were misclassified as independent contractors and therefore denied overtime.  Defendants deny liability, have disputed the FLSA Plaintiffs' damages, and have argued that the FLSA Plaintiffs are exempt from the FLSA.  Defendants also contend that they are entitled to various offsets for these claims if Plaintiffs do prevail.  The parties have hotly litigated these issues in discovery, in collective certification and decertification proceedings in the *Noll* action, and in additional discovery in the *Aucoin* and *Bowen* actions.  To avoid the risks and uncertainty of more litigation, including summary judgment, trials, and appeals over misclassification and FLSA exemptions, the Parties agreed to a Settlement that resulted in substantial relief for the FLSA Plaintiffs.  Because the claims were contested and the Settlement

---

[5] Members of the Rule 23 class who did not sign on to the *Aucoin* and *Bowen* Complaints have not released their FLSA claims against Defendants.

reflects a reasonable compromise, rather than a waiver of statutory rights, there was a bona fide dispute.

To determine whether a settlement is fair and reasonable for purposes of the FLSA, courts routinely consider the requirements for class action settlement under Rule 23, and find that if the Rule 23 settlement is reasonable, the same factors support approval of the FLSA settlement. *Id.*; *see also Curtis*, 2016 WL 3072247, at *3 (holding that analysis approving the class action settlement supports approval of the FLSA settlement as well). Here, as discussed above, under the Rule 23(e) and the *Scovil* factors, the Settlement reflects a reasonable compromise of the FLSA Plaintiffs claims. Class Members who are also FLSA Plaintiffs will receive greater payments because they took specific action to pursue their claims for overtime pay. Using Defendants' records to find the time worked, the Settlement applies objective criteria to calculate payments for the FLSA Plaintiffs' claims. This substantial relief was the product of arms-length negotiations and reflects careful assessment of the benefits and risks of continued litigation. In addition, as noted, each FLSA Plaintiff signed an individual settlement agreement with Defendants, and none opted out of or objected to the Settlement.[6] For these reasons, including those previously discussed under Rule 23(e)(2) and the *Scovil* factors, there is ample reason to conclude that the Settlement is fair and reasonable under the FLSA. Accordingly, the Court should grant final approval of the Settlement as it relates to the FLSA claims.

## VIII. CONCLUSION

For the foregoing reasons, the Settlement provides fair, reasonable, and adequate relief for all Rule 23 Class Members and FLSA Plaintiffs. Plaintiffs respectfully ask that their motion be granted and that this Court order final approval of the Settlement.

---

[6] Mr. Landry, who submitted an objection to the settlement, is not an FLSA Plaintiff.

Dated:  February 28, 2022       Respectfully submitted,

LOCKRIDGE GRINDAL NAUEN P.L.L.P.


s/Susan E. Ellingstad
Susan E. Ellingstad (MN #0243346) *pro hac vice*
Rachel A. Kitze Collins (MN #0396555) *pro hac vice*
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
612-339-6900
seellingstad@locklaw.com
rakitzecollins@locklaw.com

J. Gordon Rudd, Jr., *pro hac vice*
David M. Cialkowski, *pro hac vice*
ZIMMERMAN REED LLP
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
612-341-0400
Gordon.Rudd@zimmreed.com
David.Cialkowski@zimmreed.com

Shawn J. Wanta, *pro hac vice*
Scott A. Moriarity, *pro hac vice*
BAILLON THOME JOZWIAK & WANTA LLP
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
612-252-3570
sjwanta@baillonthome.com
samoriarity@baillonthome.com

Amy P. Dieterich
SKELTON, TAINTOR & ABBOTT
95 Main Street
Auburn, ME 04210
207-784-3200
adieterich@sta-law.com

***Attorneys for Plaintiffs***

23

Dated: February 28, 2022        Respectfully submitted,

/s/ Frederick B. Finberg

Flowers Foods, Inc., Lepage Bakeries Park Street, LLC and CK Sales Co., LLC,

By their attorneys,
Peter Bennett, Esquire
Frederick B. Finberg, Esquire
Joanne I. Simonelli, Esquire
The Bennett Law Firm, P.A.
75 Market Street, Suite 201
Portland, ME 04101
(207) 773-4775

Kevin P. Hishta, Esquire
C. Garner Sanford, Jr., Esquire
A. Craig Cleland, Esquire
Ogletree, Deakins, Nash, Smoak & Stewart
191 Peachtree St., NE, Suite 4800
Atlanta, GA 30303
(404) 881-1300

Margaret S. Hanrahan, Esquire
Ogletree, Deakins, Nash, Smoak & Stewart
201 South College Street, Suite 2300
Charlotte, NC 28244
(704) 342-2588

***Attorney for Defendants***